Maria Del Carmen REYES–GARCIA, et al., Plaintiffs, Appellees,

v.

RODRIGUEZ & DEL VALLE, INC., Defendant, Appellant.

No. 95–1455.

United States Court of Appeals, First Circuit.

Submitted April 2, 1996.

Decided April 25, 1996.

Virgilio Mendez Cuesta, Rio Piedras, on brief, for appellant.

Jose F. Quetglas Alvarez, Jose F. Quetglas Jordan and Eric M. Quetglas Jordan, Santurce, on brief, for appellees.

Before SELYA and CYR, Circuit Judges, and GERTNER,* District Judge.

SELYA, Circuit Judge.

Since appellate judges are not haruspices, they are unable to decide cases by reading goats' entrails. They instead must rely on lawyers and litigants to submit briefs that present suitably developed argumentation with appropriate citations to applicable precedents and to the record below. A party who honors the minimum standards of acceptable appellate advocacy only in the breach frustrates effective review and thereby jeopardizes its appeal. The case at bar is a paradigmatic example of a situation in which a party, by ignoring the rules, invites serious repercussions.

* Of the District of Massachusetts, sitting by designation.

## I

We sketch the underlying facts as best we can, resolving infrequent conflicts in favor of the jury verdict. *See Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 151 (1st Cir. 1990).

In 1987, defendant-appellant Rodriguez & Del Valle, Inc. (R & D), a general contractor, executed an agreement with a public agency, the Urban Renewal and Housing Corporation of Puerto Rico (the Corporation), to renovate several residential buildings in the Puerta de Tierra Housing Community, San Juan, Puerto Rico. Without obtaining the permission required by relevant regulations—or any other semblance of permission, for that matter—R & D levelled speed bumps on a road that provided entry into the Housing Community. Though flattening the protuberances facilitated access to the work site by R & D's vehicles and heavy machinery, the changed configuration also effectively converted the roadway into a drag strip for high-speed racing. Dismayed residents soon petitioned the municipality to reconstruct the speed bumps. The powers-that-be acquiesced and the municipality rebuilt the moguls (spacing them at their original fifty-foot intervals, rather than at the 100–foot intervals then mandated by applicable highway safety regulations). The drag-racing ceased and traffic slowed to a snail's pace.

R & D was not to be inconvenienced. It again levelled the speed bumps on its own authority. Not surprisingly, drag-racing resumed and the pace of traffic accelerated. When R & D finished the renovations limned by its contract, it departed the site without restoring the roadway to its original hump-backed condition. Residents alerted the authorities, warning that lives were at stake. After conducting an investigation, the municipality concluded that someone had best rebuild the speed bumps.

History teaches that at one point Rome burned while the Emperor fiddled. On September 18, 1990—while various parties (including R & D and the Corporation) were fencing over who had the responsibility to restore the speed bumps—a motorist named Jose Flores, travelling at high speed on the roadway, lost control of his automobile and struck plaintiff-appellee Maria del Carmen Reyes–Garcia (Reyes) as she stood on the sidewalk. The impact caused permanently debilitating injuries, including the severance of a limb.

Invoking diversity jurisdiction, 28 U.S.C. § 1332(a), the plaintiff, by then a citizen of New Jersey, sued several parties, including R & D, in the United States District Court for the District of Puerto Rico.[1] At trial plaintiff advanced a golconda of tort theories against R & D, claiming *inter alia* that R & D had violated a highway safety regulation requiring contractors to seek permission from the municipality prior to removing speed bumps, and that R & D's conduct had transgressed the general duty of care owed under Puerto Rico law. *See* P.R.Laws Ann. tit. 31, § 5141 (1991) (providing for liability when a defendant "by an act or omission causes damage to another party through fault or negligence").

After a six-day trial, a jury found for the plaintiff and awarded her $700,000. It apportioned the damages 80% against the Corporation and 20% against R & D. The district court denied a variety of post-trial motions. R & D now appeals.

## II

The appellant's submissions to this court are in utter disregard of the applicable procedural rules. It filed a nine-page opening brief that did not contain a table of contents, a list of legal authorities, a jurisdictional statement, a statement of the case, a précis of the issues presented for review, or a summary of the argument. The merits section of the brief lacked developed argumentation, eschewed any meaningful citations to pertinent legal authority, omitted particularized references to the record evidence, and did not discuss the applicable standard(s) of review. To cap matters, the appellant failed to prepare a record appendix. In short, the brief violated a whole series of requirements imposed by applicable procedural rules. *See,*

---

1. Reyes' children also sued, but we need not discuss their claims.

*e.g.,* Fed.R.App.P. 28(a)(1)–(6), 28(e), & 30(a); 1st Cir.R. 28.2.

The plaintiff moved to dismiss the unleavened appeal. R & D responded in fits and starts. It filed two addenda to its opening brief (neither of which satisfactorily repaired the manifold defects in its original filings). Without consulting the plaintiff, *see* Fed.R.App.P. 30(b), R & D also prepared and filed a thirteen-page record appendix. This submission lacked vital excerpts from the trial record. It also lacked, among other things, an index, relevant docket entries, the notice of appeal, and the opinion of the district court denying the post-trial motions. The principal document in the appendix was in the Spanish language, without translation. These shortcomings violated the rules several times over. *See, e.g.,* Fed.R.App.P. 30(a), (d); 1st Cir.R. 28.2 & 30.7.

### III

Procedural rules are important for two overarching reasons. One reason is that rules ensure fairness and orderliness. They ensure fairness by providing litigants with a level playing field. They ensure orderliness by providing courts with a means for the efficient administration of crowded dockets. In both these respects rules facilitate the tricornered communications that link the opposing parties with each other and with the court.

The second overarching reason why procedural rules are important has a functional orientation: rules establish a framework that helps courts to assemble the raw material that is essential for forging enlightened decisions. In an appellate venue, for example, rules provide the mechanism by which the court, removed from the battlefield where the trial has been fought, gains the information that it requires to set the issues in context and pass upon them. When a party seeking appellate review fails to comply with the rules in one or more substantial respects, its failure thwarts this effort and deprives the appellate court of the basic tools that the judges of the court need to carry out this task. *See Scarfo v. Cabletron Sys., Inc.,* 54 F.3d 931, 963 (1st Cir.1995); *Moore v. Murphy,* 47 F.3d 8, 10 (1st Cir.1995); *Jardines*

*Bacata, Ltd. v. Diaz–Marquez,* 878 F.2d 1555, 1559 n. 5 (1st Cir.1989); *Real v. Hogan,* 828 F.2d 58, 60 (1st Cir.1987).

In this instance the second reason is of paramount importance. The deficiencies in the appellant's submissions are pervasive. They frustrate any reasonable attempt to understand its legal theories and to corroborate its factual averments. Canvassing the appellant's arguments illustrates the point.

■ The appellant's principal claim is that it enjoyed a privilege to remove the speed bumps because they were placed at shorter intervals than prescribed by the governing municipal regulation. This paralogism, however, is unsupported by any citation either to legal authority or to record evidence. Therefore, we must treat the argument as forfeited. *See Ryan v. Royal Ins. Co.,* 916 F.2d 731, 734 (1st Cir.1990) ("It is settled in this circuit that issues adverted to on appeal in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned."); *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.) (same), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990); *see also* Fed.R.App.P. 28(a)(5) (explaining that an appellate "argument must contain the contentions of the appellant on the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on"). To make a bad situation worse, the argument is bereft of any indicium that it was seasonably advanced and properly preserved in the lower court.

■ The appellant's next asseveration is that the evidence does not support the jury verdict. Here, too, the appellant offers us no assurance that the necessary steps were taken below to preserve the point, and the fragmented record that it has produced does not afford any reliable way to tell. At any rate, the appellant furnishes no citations to the record in support of its rhetoric, but asks in effect that we take its rodomontade at face value. There is no justification for doing so.

■ The appellant's third argument implicates the refusal to order a remittitur. Federal law governs the question of whether

the trial court should order a remittitur in a diversity case. *See Blinzler v. Marriott Int'l, Inc.,* 81 F.3d 1148, 1161 (1st Cir.1996). Under federal law, appellate review of a trial court's refusal to trim a verdict is necessarily limited to whether the court abused its discretion in leaving the award intact. *See, e.g., Ruiz v. Gonzalez Caraballo,* 929 F.2d 31, 34 (1st Cir.1991); *Wagenmann v. Adams,* 829 F.2d 196, 215 (1st Cir.1987). Though bare-boned, the record makes manifest the nature and extent of the plaintiff's injuries. We need not go into graphic detail; even at a casual glance, it beggars credulity to argue, as does R & D, that $700,000 in damages for a severed limb and other injuries is "grossly excessive, inordinate, shocking to the conscience ..., or so high that it would be a denial of justice to permit it to stand." *Correa v. Hospital San Francisco,* 69 F.3d 1184, 1197 (1st Cir.1995) (quoting *Grunenthal v. Long Island R.R. Co.,* 393 U.S. 156, 159 & n. 4, 89 S.Ct. 331, 333 & n. 4, 21 L.Ed.2d 309 (1968)).

 The appellant's final argument is that it is entitled to a new trial because the district court allegedly declined to name Flores, the driver of the speeding car, on the verdict form.[2] But the meager record that we have before us does not indicate that R & D preserved an objection on this ground at trial, and preserving the point is a prerequisite to a successful appeal. *See, e.g., Putnam Resources v. Pateman,* 958 F.2d 448, 456 (1st Cir.1992) ("Silence after instructions, including instructions on the form of the verdict to be returned by the jury, typically constitutes a waiver of any objections."). In all events, the appellant neglects to mention the singularly important fact that Flores was not a party to the lawsuit; the plaintiff had failed properly to serve him, and the appellant had not seen fit to implead him. The appellant offers no plausible theory why the district judge, under these circumstances, should have inserted Flores' name on the verdict form—and we can think of none.

 The parties to an appeal must recognize that rules are not mere annoyances, to be swatted aside like so many flies, but, rather, that rules lie near the epicenter of the judicial process. This case shows why that is so; indeed, we have canvassed the appellant's asseverational array mainly to demonstrate that, even if we were inclined to do R & D's homework—and that is not our place—R & D's substantial noncompliance with the rules would hamstring any attempt to review the issues intelligently. Of course, there must be some play in the joints. No one is perfect, and occasional oversights—fribbling infringements of the rules that neither create unfairness to one's adversary nor impair the court's ability to comprehend and scrutinize a party's submissions—ordinarily will not warrant Draconian consequences. But major infractions or patterns of repeated inattention warrant severe decrees. "In the long run, ... strict adherence to ... procedural requirements ... is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980).

 We hold that a party's persistent noncompliance with appellate rules, in and of itself, constitutes sufficient cause to dismiss its appeal. *See Kushner v. Winterthur Swiss Ins. Co.,* 620 F.2d 404, 407 (3d Cir.1980) (dismissing appeal for failure to comply with FRAP rules); *see also Mortell v. Mortell Co.,* 887 F.2d 1322, 1327 (7th Cir.1989) (observing that failure to comply with the rules can be "fatal" to an appeal); *Katz v. King,* 627 F.2d 568, 571 n. 3 (1st Cir.1980) (warning that failure to observe the rules may "result in the loss of valuable rights" and listing dismissal as an appropriate response to such violations); *see also* Fed.R.App.P. 3(a) (stipulating that the "[f]ailure of an appellant to take any step other than the timely filing of a notice of appeal" may be grounds "for such action as the court of appeals deems appropriate, which may include dismissal of the appeal"). We need not tarry in applying this holding to the case at hand. Appeals must be prosecuted in substantial compliance with

---

**2.** The jury form did permit the jurors to find that the driver's negligence constituted the sole proximate cause of the plaintiff's injuries and to exonerate R & D in that event. The jury found otherwise.

applicable procedural rules and this appeal fails that test.[3] The violations here are nothing short of egregious. Dismissal is plainly warranted. Accordingly, the appeal is dismissed with prejudice.

## IV

 We have one more base to touch. If the shoe fits, the court of appeals may impose sanctions. *See* Fed.R.App.P. 38 (authorizing awards of "just damages" and "double costs" for frivolous appeals); 28 U.S.C. § 1912 (similar); 28 U.S.C. § 1927 ("Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."). The plaintiff urges that this is an appropriate instance for the imposition of such sanctions.

We have said that "[a]ppellate sanctions are aimed at discourag[ing] litigants from wasting time and resources of both their opponents and the judicial system with arguments that are without merit." *Transnational Corp. v. Rodio & Ursillo, Ltd.*, 920 F.2d 1066, 1072 (1st Cir.1990); *see also Toscano v. Chandris, S.A.*, 934 F.2d 383, 387 (1st Cir.1991) (explaining that sanctions are a proper response to a frivolous appeal). By like token, sanctions are an appropriate means of discouraging parties and their counsel from wasting the time of courts and other litigants by prosecuting appeals in ways that deviate substantially from the rules. *See, e.g., Calderon–Ontiveros v. INS*, 809 F.2d 1050, 1053 (5th Cir.1986) (imposing sanctions for failure to comply with FRAP rules); *Hamblen v. County of Los Angeles*, 803 F.2d 462, 464–65 (9th Cir.1986) (similar). Here, the imposition of sanctions may well serve either or both of these purposes.

In order to ensure that we hear both sides of the story, we direct the plaintiff's counsel to prepare, file, and serve within two weeks of the date hereof an application for fees and costs on appeal in the usual format, *see, e.g.,*

*Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 527 (1st Cir.1991) (discussing contents of fee applications), together with a memorandum of law, not to exceed ten pages in length, in support of the plaintiff's request for sanctions. Within two weeks thereafter, the appellant shall file a memorandum (subject to the same page limitation) attempting to show cause (if any there be) why sanctions should not be assessed against R & D and its counsel, jointly and severally. R & D may, if it so elects, file at the same time an affidavit of its counsel commenting upon the reasonableness of the fees requested by the applicant.

*The appeal is dismissed with prejudice. We retain appellate jurisdiction for the purpose of further considering the plaintiff's request for sanctions. The parties shall make the filings described herein within the assigned time parameters. We shall withhold mandate until the question of sanctions has been resolved.*

*So Ordered.*

---

**3.** In all candor, moreover, the appeal—from what we can tell—appears to be totally devoid of

