Vinicio **MEDRANO DIAZ**,
Appellant–Plaintiff,

v.

Teresa **VAZQUEZ–BOTET**, et
al., Appellees–Defendants.

**Civil Nos. 95–2452(DRD), 96–1980(DRD).**

United States District Court,
D. Puerto Rico.

Dec. 31, 1996.

Igor Dominguez–Perez, Hato Rey, PR, for Vinicio Medrano–Diaz.

Victor P. Miranda–Corrada, Hato Rey, PR, for Orlando R. Gonzalez–Hernandez, Iris V. Ramos.

Eli B. Arroyo, San Juan, PR, for Teresa Vazquez–Botet.

### OPINION AND ORDER

DOMINGUEZ, District Judge.

Before the Court is Plaintiff's consolidated Appeals from the Bankruptcy Court's partial judgment finding that Defendant Mrs. Teresa Vazquez–Botet had a fifty percent (50%) ownership interest in the proceeds from a lottery prize to be paid over a period of twenty (20) years, and from its final judgment denying Plaintiff's Motion to Set Aside Judgment and dismissing Plaintiff's claims against Defendants Teresa Vazquez–Botet and Orlando R. Gonzalez. For the reasons described below, the Court affirms the Bankruptcy Court's judgment.

## I. BACKGROUND

This dispute involves the prepetition ownership of an extremely valuable asset. On December 6, 1991, on the eve of getting married and while living together, appellant Vinicio Medrano and appellee Teresa Vazquez–Botet purchased an electronic lottery ticket which subsequently won an approximately $3.5 million prize. Appellee Vazquez–Botet claims that at that time, and prior to marriage, the parties had agreed that the ticket and prize belonged to the two of them separately ("privativamente") in equal parts[1]. Mr. Medrano and Mrs. Vazquez were married shortly thereafter, on December 20, 1991. Unfortunately their relationship went sour and they were divorced on November 13, 1992. The fight over the lottery prize immediately ensued.

After the divorce was decreed and while proceedings were pending before the Superior Court of Puerto Rico to determine ownership of the prize, Plaintiff–Appellant Vinicio

---

**1.** *See,* Deed number 25, Last Will and Testament of Mr. Medrano, and Deed number 26, Declaration of Separate Property also of Mr. Medrano, dated February 18, 1992, wherein Mr. Medrano confirms a prior agreement with Mrs. Teresa Vazquez that the prized lottery ticket was owned one half by each separately ("privativamente"). *See infra* notes 5 and 6.

Medrano filed petition for bankruptcy on December 17, 1992. The instant adversary proceeding followed, thus removing the controversy from the State Court to the Bankruptcy Court. Plaintiff requested adjudication of his "exclusive" rights over the lottery prize and damages for the alleged misappropriation of his property through fraud and deceit. Defendants answered the complaint denying Plaintiff's averments of misappropriation, fraud and deceit. In addition, Defendant Vazquez counterclaimed seeking declaration of fifty percent (50%) separate ownership interest in the prize.

After various procedural incidents, including the temporary dismissal of the bankruptcy petition, the Bankruptcy Court held a two-day bench trial. At the conclusion of trial the Court from the bench dismissed the case and issued partial judgment accordingly on May 31, 1995, dismissing the adversary proceeding. *See* Bankr.Adv. 93–00110(ESL), D.E. 109. Not satisfied with this result, Plaintiff filed a Motion to Set Aside Judgment under Rules 59 and 60(b) of the Federal Rules of Civil Procedure.

Subsequently, on September 14, 1995, the Bankruptcy Court entered partial judgment for Defendant Vazquez on the counterclaim granting entitlement to her of fifty percent (50%) of the approximately $3.5 million lottery prize and holding that the Bureau of the Lottery was obligated to pay her individually fifty percent (50%) of the prize. Plaintiff, once again, renewed his Motion to Set Aside Judgment and subsequently appealed the partial judgment issued on defendant's counterclaim. (The first appeal before this Court).

While this first appeal was pending, the Bankruptcy Court denied Plaintiff's Motion

to Set Aside Judgment and entered final judgment, on November 20, 1995, dismissing Plaintiff's claims against Defendant Teresa Vazquez–Botet and Defendant Orlando R. Gonzalez. The second appeal ensued. Due to the close interrelationship between the controversies both appeals were consolidated.[2]

## II. CONTENTIONS OF THE PARTIES

Appellant challenges the Bankruptcy Court's appreciation of evidence presented and admitted at trial and argues that Mrs. Vazquez is not entitled to any share of the lottery prize because she did not file a timely bankruptcy claim and that she does not have an ownership interest in the prize. Appellee's position is that her share of the lottery prize was her private property prior to Appellant's filing for bankruptcy and that the filing of the petition can not convert her private individual property into property of the estate. Appellant Medrano further contends that the Bankruptcy Court lacked jurisdiction to entertain the instant adversary proceeding and that, if it had jurisdiction, it abused its discretion in denying continuance of trial[3].

## III. JURISDICTION

The Court has appellate jurisdiction over this case pursuant to 28 U.S.C. § 158(a)(1) and Fed.R.Bankr.P. 8001(a). As discussed below, the Debtor was entitled to appeal as of right from both the Bankruptcy Court's partial judgment and final judgment, and the appeals were timely filed.

 A party may appeal as of right from a Bankruptcy Court's final judgment,

---

**2.** Plaintiff's briefs for each of the appeals are essentially identical except for an additional claim included in the appeal from the final judgment, arguing that once Plaintiff filed appeal from the partial judgment, the bankruptcy Court no longer had jurisdiction to consider Plaintiff's Motion to Set Aside Judgment and to enter final judgment dismissing Plaintiff's claims. Upon Plaintiff's motion this Court consolidated both appeals.

**3.** The Court notes that Appellant–Plaintiff's complaint included several other causes of action of misappropriation of plaintiff's business, fraud, and deceit. Although Appellant mentioned in

passim the issue of misappropriation of plaintiff's business in his discussion of the Bankruptcy Court findings, appellant did not develop these issues on his brief. Therefore, the Court deems these claims to be waived. *See Maria del Carmen Reyes–Garcia v. Rodriguez and Del Valle*, 82 F.3d 11 (1st Cir.1996) (quoting *Ryan v. Royal Ins. Co.*, 916 F.2d 731, 734 (1st Cir.1990)) ("It is settled in this circuit that issues adverted in appeal in a perfunctory manner, unaccompanied by some developed argument, are deemed to have been abandoned."); *see also United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

order, or decree. 28 U.S.C. § 158(a)(1) (1993 & West Supp.1995); Fed.R.Bankr.P. 8001(a). In contrast, if the order or decree is not final, the party may appeal only by leave of the district court or bankruptcy appellate panel, as the case may be. 28 U.S.C.A. § 158(a)(3); Fed.R.Bankr.P. 8001(b) & 8003. According to some commentators, courts have applied "a more lenient standard of finality" in bankruptcy proceedings than in nonbankruptcy cases. 6 Chapter 11 Theory and Practice: *A Guide to Reorganization* § 34.13 at 34:16 (James F. Queenan, Jr. et al. eds., 1994). However, the difference between the bankruptcy and ordinary civil definitions of finality would be better described as not resulting from any leniency, but instead from the more complicated nature of a bankruptcy case, which in the normal course of events is composed of a multiplicity of discrete proceedings. As one court has noted, there is "[a]n uninterrupted tradition of judicial interpretation in which courts have viewed a 'proceeding' within a bankruptcy case as the relevant 'judicial unit' for purposes of finality." *In re Saco Local Development Corp.*, 711 F.2d 441, 445 (1st Cir.1983). Thus, instead of "end[ing] the litigation on the merits and leav[ing] nothing for the court to do but execute the judgment," in bankruptcy an order "need not dispose of all aspects of a case in order to be final; an order which disposes of a 'discrete dispute within the larger case will' be considered final and appealable.... The order in question must, however, 'conclusively determine' the dispute." *In re American Colonial Broadcasting Corp.*, 758 F.2d 794, 801 (1st Cir.1985) (quoting *In re Saco,* 711 F.2d at 444).

■ Plaintiff timely filed notice of appeal from the partial judgment on September 25, 1995, and from the final judgment on November 21, 1995. Both the partial and final judgments are final for purposes of 28 U.S.C. § 158(a)(1) and Fed.R.Bankr.P. 8001(a). The partial judgment finding that Defendant Mrs. Teresa Vazquez–Botet had a fifty percent (50%) ownership interest in proceeds from the lottery prize is a final order for purposes of 28 U.S.C. § 158(a)(1) and Fed.R.Bankr.P. 8001(a). The effect of this order was to conclusively decide on the merits the parties' ownership rights to the lottery prize prior to Plaintiff's filing for bankruptcy, implicit with-

in this decision is the Bankruptcy Court's determination that Mrs. Vazquez separate share ("porcion privativa") of the prize is not an asset of the estate. This adjudication disposes of only one "discrete dispute" within the various claims presented in the case. Thus, Plaintiff was therefore entitled to appeal, as of right, from that judgment.

The final order and judgment terminated the adversary proceeding denying Plaintiff's Motion to Set Aside Judgment and dismissing all of plaintiffs remaining claims, including the damages, fraud and deceit claims pertaining to misappropriation of plaintiff's other assets (i.e. his business, commissions, and real estate); and the professional malpractice claims against defendant Orlando R. Gonzalez. This matter constitutes "a separate dispute within the larger case" which was "conclusively determined" by the final judgment. *In re American Colonial Broadcasting Corp.,* 758 F.2d at 801. Plaintiff's argument that his filing appeal from the partial judgment rendered the Bankruptcy Court without jurisdiction to decide on these other disputes is devoid of merit.

IV. Standard of Review

Bankruptcy Rule 8013 provides that "[o]n appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *See In re LaRoche,* 969 F.2d 1299, 1301 (1st Cir.1992). Findings of fact in bankruptcy proceedings, as in other civil cases, are clearly erroneous when the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). In comparison, a bankruptcy court's conclusions of law are reviewable de novo, by analogy to "the familiar standards of review normally employed in appeals to the courts of appeals in civil cases generally." *In re LaRoche,* 969 F.2d at 1301; *see also Rome v.*

*Braunstein,* 19 F.3d 54, 58 (1st Cir.1994) (citing *In re LaRoche,* 969 F.2d 1299); *In re DN Associates,* 3 F.3d 512, 515 (1st Cir. 1993); *In re G.S.F. Corp.,* 938 F.2d 1467, 1474 (1st Cir.1991), *In re Gonic Realty Trust,* 909 F.2d 624, 626 (1st Cir.1990). Finally, discretionary decisions are reviewed under an abuse of discretion standard. *In re Gonic,* 909 F.2d at 626 ("[d]iscretionary rulings made pursuant to the Bankruptcy Code are reviewable only for abuse of discretion").

## V. ANALYSIS

### A. Factual Findings of the Bankruptcy Court.

■ The issue before the Bankruptcy Court was whether Appellant–Plaintiff, Vinicio Medrano, and Appellee–Defendant, Teresa Vazquez, had an agreement with regard to ownership of the lottery prize. The Bankruptcy Court found as a matter of fact that they had purchased the lottery ticket together and that they had agreed to share the prize in equal parts.

Upon review of the Bankruptcy record, this Court determines that the Bankruptcy Court's determination is supported by the following findings which are adequately supported by the record as a whole:

1) During the period pertinent to this dispute, the relationship between Mr. Medrano and Mrs. Vazquez took many different variations. She was initially an employee at Mr. Medrano's business. Thereafter, an intimate relationship developed between them to the extent that they cohabitated and lived together.

2) During this relationship Mr. Medrano and Mrs. Vazquez treated everything as one, and she handled the money because, in his own words, he trusted her to take better care of his finances. These determinations are supported by Mr. Medrano's own testimony to the effect that after receiving the first installment on the lottery prize he and Mrs. Vazquez went to a bank and opened three accounts in her name. Further, Mrs. Vazquez testified that at least one of the accounts was for household use and belonged to both of them.

3) During this period, on the eve of getting married, Mr. Medrano and Mrs. Vazquez, purchased the lottery ticket that subsequently won a prize for approximately $3.5 million.

4) At the time Mr. Medrano and Mrs. Vazquez purchased the ticket and the day after, when they realized that they had won, they considered the prize as owned equally by both. This determination is supported by the fact that both, Mr. Medrano and Mrs. Vazquez, went to Attorney Orlando Gonzalez, who had been Mr. Medrano's attorney, to try to give some legal formality to their intention of dividing the lottery ticket in half owned separately. The Court specifically found, based on Mr. Gonzalez's testimony, that the instructions were given to Mr. Gonzalez by Mr. Medrano, that the intention was to divide the winning ticket in two (2), that they had purchased it before they were married, and that they wanted something in writing to so appear[4].

5) After Mr. Medrano and Mrs. Vazquez were married, they continued showing through public manifestations the separate ownership of the lottery prize. Mr. Medrano contacted Mr. Gonzalez to prepare his Last Will and Testament. Soon thereafter, Mr. Medrano executed the deed containing his Last Will and Testament, together with a Declaration of Separate Property. *See infra* notes 5 and 6.

This Court stresses, based on the Deeds of Last Will and Testament and the Declaration of Separate Property, prepared by counsel Orlando Gonzalez on instructions given to him by Mr. Medrano, that the lottery ticket prize purchased prior to marriage was to be owned by both Mr. Medrano and Mrs. Vazquez equally and separately ("privativamente"). The deeds formally signed on February 18, 1992 were but a formality of the prior instructions given to counsel Gonzalez recognizing the agreement entered into before marriage. *See* Transcript of Order and Findings of Fact of Hearing held on November, 22, 1994, Bankr.Adv. 93–0010(ESL), D.E. 89, p. 4. The subsequently drafted deeds refer to the equal ownership of both in

---

**4.** *See infra.* Deeds of Last Will and Testament, and of Declaration of Private Property, at notes 5 and 6, wherein Mr. Medrano states that their

participations in the ticket and prize are their separate property ("privativamente").

the lottery prize as separate property ("privativamente"). *See infra,* notes 5 and 6.

## B. Validity of the agreement to share the prize.

■ Appellant contends that his agreement with Mrs. Vazquez is unenforceable because the Deed containing the Declaration of Separate Property is allegedly null and void and because the Last Will and Testament was subsequently revoked and superseded by a subsequent Testament. Plaintiff's argument is that the agreement was perfected in those two deeds and since the two deeds no longer have any legal effect as notarized public instruments, the agreement becomes without effect.

Plaintiff's contention is erroneous. The Civil Code of Puerto Rico provides that "[a] contract exists from the moment one or more persons consents to bind himself or themselves, with regard to another or others to give something or to render some services". Civil Code of Puerto Rico, Art. 1206, P.R. Laws Ann. tit. 31, § 3371 (Official Translation 1993). Likewise, Article 1210 provides that "contracts are perfected by mere consent, and from that time they are binding, not only with regard to what has been expressly stipulated, but also with regard to all the consequences which, are in accordance with good faith, use, and law." Civil Code of Puerto Rico, Art. 1210, P.R.Laws Ann. tit. 31, § 3375. According to the findings of the Bankruptcy Court, Mr. Medrano and Mrs. Vazquez purchased the ticket together and from that time agreed to share the prize in equal parts. Thus, it follows that the contract between Mr. Medrano and Mrs.

Vazquez was perfected upon buying the ticket and not upon execution of the deeds. The deeds were not the contract itself but part of the evidence, together with the testimony of Mrs. Vazquez, admitted to prove the existence of the agreement. Furthermore, their agreement to share the prize did not have to be reduced to writing in order to be binding. The Civil Code of Puerto Rico provides that "[c]ontracts shall be binding, whatever may be the form in which they might have been executed, provided the essential conditions for their validity exist." Civil Code of Puerto Rico, Art. 1230, P.R. Laws Ann. tit. 31, § 3451. The fact that Mr. Medrano subsequently executed the two notarized documents in which he recognized the existence of their ownership agreement only serves to strengthen the credited testimony of Mrs. Vazquez. There is no doubt that the admissions made therein weighed heavily in the trial court's determination that an agreement between Mr. Medrano and Mrs. Vazquez had been reached. Both documents simply and clearly stated that the ticket was purchased prior to the marriage, that the prize belonged to the two of them in equal shares, and that said shares were their separate property ("privativamente") before getting married. The fact that the Testament was subsequently revoked, thus rendering it without legal effect as plaintiff's last will and post-mortem disposition of his property, does not change its nature as an admission against interest made under oath [5]. Similarly, the statements subsequently restated by Mr. Medrano in the Declaration of Separate Property, whose validity is now contested, also qualify as admissions against interest regardless of its latter validity [6]. To summa-

---

5. The Testament of Mr. Medrano stated the following:

"SECOND: Testator, in consequence wishes to dispose and hereby disposes that the free half goes and that it be for his wife, Mrs. Teresa Vazquez Botet, without condition or restraint whatsoever. *Manifests and recognizes that the lottery prize which was bestowed upon him the past sixth day of December, nineteen hundred ninety-one, one week before getting married to Mrs. Teresa Vazquez Botet, was bought with money that she gave him and that the agreement was and as such he reaffirms that half the prize is her separate property notwithstanding that the same appears inscribed or registered under his name."* Deed number 25, Open Testament, executed on

February 18, 1992, par. II (Our translation) (emphasis ours).

6. In the Deed of Declaration of Separate Property Mr. Medrano stated that:
"FIRST: That the sixth day of December nineteen hundred ninety-one, [they] were blessed with the prize of the Puerto Rico Loto, ascending to the sum of THREE MILLION, FIVE HUNDRED THOUSAND DOLLARS ($3,500,000).
"SECOND: That recognizing the appearing that on the date in which they received the prize they were not yet legally married, they wish to recognize for all pertinent legal purposes and to that effect recognize and state that the amount adjudged by virtue of said prize or to be adjudged, *belongs to each of them by equal shares*

rize, regardless of whether these documents still have legal effect as notarized public instruments, Plaintiff's admissions under oath contained therein are admissible as evidence to support the existence of the agreement.

## C. Division of the prize under the Electronic Lottery Law.

■ Appellant further argues that his contract with Mrs. Vazquez is unenforceable because the Electronic Lottery Law and the regulations do not recognize multiple owners of a ticket, and that once the prize was registered in his name the regulations of the Electronic Lottery Law forbid transfer or division of the annual payments. Appellant relies on article 11 of the Electronic Lottery Law and section 4.9 of the regulations, which provide in pertinent part:

"The Lottery tickets shall be deemed as bearer bonds and the person who holds said ticket and presents it for collection, shall be recognized as the sole owner of the prize." P.R. Laws Ann.Tit. 15, § 810. "The annuities in favor of the winner of a Lotto prize are not transferrable to third persons natural or juridical, and therefore, during the term of the contract of annuity can not be negotiated in any way nor be subject to financial transactions. Winners will not be able to redeem or liquidate the annuity before the date of . . ." Additional Lottery Operational Regulations, November 15, 1995, No. 4588, Section 4.9. (Our translation)

Appellant's reliance on these provisions of the Electronic Lottery Law and its regulation is misplaced. First, section 4.9 has no bearing as to the issue of ownership or claim over the lottery prize. This section is merely a restriction on the negotiability of the annuity payments which is the method of payment

established by the regulation for prizes in excess of two hundred thousand (200,000) dollars. Second, the Supreme Court of Puerto Rico, in interpreting the counterpart to article 11 of the Electronic Lottery Law for the "Puerto Rico Lottery" Law [7], held that although "for the purpose of prize payment, the holder of the ticket presenting it for collection shall be deemed the only owner, [t]his does not imply, however, that the payment of the prize to the holder or bearer of a winning ticket is a definite, absolute and unassailable adjudication of the ownership right to such prize, to the prejudice of a third party . . . *a third person claiming to be the legitimate owner of the prize or to have some participation in it, is not precluded from making a claim in court.*" *Mieres v. Calimano,* 76 P.R.R. 656, 660 (1954) (emphasis ours).

In addition, Section 4.6 of the Additional Lottery Operational Regulations specifically contemplates the factual scenario presented by the agreement between Mr. Medrano and Mrs. Vazquez. This section recognizes that two or more persons may have a legitimate claim to the lottery ticket but prescribes that in such case payment will be made only to one natural person to be designated by the various persons claiming the prize. Section 4.6 specifically provides that "[t]he payment of a prize will be made only to one natural person, regardless of the number of persons, natural or juridical, that may claim ownership to the winning ticket . . . If various natural persons appear to collect a winning ticket they shall designate the natural person in whose favor the prize will be paid." Additional Lottery Operational Regulations, November 15, 1995, No. 4588, Section 4.6 [8]. Said regulation precisely contemplates the controversy between Mr. Medrano and Mrs.

---

*and that said participation is their separate property.*" Deed number 26, Declaration of Separate Property, executed on February, 18, 1992, par. I and II (Our translation) (emphasis ours).

7. Puerto Rico Lottery Law, P.R.Laws Ann. tit. 15, § 122(a)(2).

8. The pertinent regulation reads as follows:

"The payment of a prize will be made only to one natural person, regardless of the number of persons, natural or juridical, that may claim ownership to the winning ticket. As to the pay-

ment of the prizes, the blank spaces appearing at the back of the ticket for inserting name, address, and signature do not create nor confer any rights.

"Likewise, the prizes will be paid to the natural person who presents for payment a winning ticket even though a name or signature may appear in its back. If various natural persons appear to collect a winning ticket they shall designate the natural person in whose favor the prize will be paid." Additional Lottery Operational Regulations, November 15, 1995, No. 4588, Section 4.6. (Our translation.)

Vazquez. Pursuant to their agreement, they both had a separate ownership interest over the prize and when they presented the ticket for collection they chose to designate Mr. Medrano as the person in whose name the prize would be paid. Mr. Medrano can not eradicate Mrs. Vazquez's right by negating the agreement. Accordingly, Mrs. Vazquez was not precluded from asserting her ownership right in the Superior Court of Puerto Rico and later in the Bankruptcy Court.

Plaintiff also proposes an elaborate argument interweaving several dispositions from the Electronic Lottery Law, the Law of Trusts, and the Civil Code. The Court need not address this theory for it is unmeritorious considering the clear holding in the case *Mieres v. Calimano*, 76 P.R.R. at 660.

D. Mrs. Vazquez had a property interest in the lottery prize not a claim against the bankruptcy estate:

 Finally, plaintiff's argument that Mrs. Vazquez is not entitled to share in any portion of the lottery prize because her claim was listed as disputed and she failed to file a timely proof of claim is also devoid of merit. Plaintiff reaches this conclusion by misconstruing his relationship with Mrs. Vazquez as that of debtor-creditor when in reality they were separate co-owners of the lottery prize. Plaintiff apparently relies on a case from the Bankruptcy Court of Arizona, *In re Dalton*, 146 B.R. 460 (1992), where the Bankruptcy Court determined that under Arizona Law the entire lottery prize was property of the estate and any person other than the holder of the ticket was a creditor of the estate. This case is not relevant to the dispute before this Court because, as stated above, under Puerto Rico law Mrs. Vazquez is authorized to have a separate ownership interest in the lottery ticket and prize, recognized by the Electronic Lottery of Puerto Rico. Unlike the Arizona Lottery Law, the Lottery Law of Puerto Rico recognizes that a lottery ticket may have multiple owners who can seek to establish their individual claims in Court. *Mieres v. Calimano*, 76 P.R.R. at 660; Additional Lottery Regulations, No. 4588., *supra.* note 8.

 It is clear that all of a debtor's property as of the commencement of the case is part of the bankruptcy estate. When a debtor files for bankruptcy, all of the debtor's property becomes property of the estate. *See* 11 U.S.C.A. § 541. The scope of section 541 is broad and includes all tangible or intangible property. *In re McClain Airlines, Inc.*, 80 B.R. 175, 177 (Bankr.D.Ariz. 1987). *See also Neuton v. Danning*, 922 F.2d 1379, 1382–83 (9th Cir.1990) (contingent interests are property of the estate). However, the scope of section 541(a) is not without limit. A debtor may not use section 541(a) to divest another of property to which that person has rightful title. *In re Central Medical Center, Inc.*, 122 B.R. 568, 573 (Bankr.E.D.Mo.1990). Section 541 merely defines what interests of debtor are transferred to the estate. It does not address the threshold question of the existence and scope of the debtor's interests. *State of California v. Farmers Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir.1986). These questions are resolved by reference to nonbankruptcy law. *Id.*

Applying Puerto Rico law, this Court has upheld the Bankruptcy Court's determination that Mrs. Vazquez share of the prize was not an asset of the bankruptcy estate. Mrs. Vazquez had a separate property interest in the ticket that precedes plaintiff's filing for bankruptcy. It therefore follows that Mrs. Vazquez is not a creditor of the estate and as such was not required to file any proof of claim.

Recapitulating, the determination of the Bankruptcy Judge that Mrs. Vazquez was the owner of fifty percent (50%) of the lottery ticket is based on facts determined by credibility and admissions made by Mr. Medrano in the Deeds of Last Will and of Separate Property. These findings are not "clearly erroneous" and therefore are not to be disturbed on appeal. Further, the legal conclusion under Puerto Rico law that more than one person may be owner of a lottery ticket, although only one may collect, is equally sound, *Mieres v. Calimano*, 76 P.R.R. at 660 (1954).

E. Effect of the temporary dismissal of the principal case on the adversary, and the Bankruptcy Court's denial of Continuance:

 Appellant argues that the Bankruptcy Court incurred in reversible error by de-

nying continuance of the trial because of the alleged adverse effect that dismissal of the underlying bankruptcy case had on this adversary proceeding. The denial of a motion for continuance is committed to the Bankruptcy Judge's sound discretion. *In re Bay Broadcasting, Inc.*, 182 B.R. 369, 372 (D.P.R. 1995); *In re Parker Steel Co.*, 149 B.R. 856 (Bankr.N.D.Ohio 1992). Discretionary decisions are reviewed under an abuse of discretion standard. *In re Gonic*, 909 F.2d at 626. ("[d]iscretionary rulings made pursuant to the Bankruptcy Code are reviewable only for abuse of discretion"). Only an "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay will abuse it". *Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S.Ct. 1610, 1616–1617, 75 L.Ed.2d 610 (1983). For the reasons discussed below, we find no abuse of discretion by the Bankruptcy Court.

▬ Appellant's contention, that the temporary dismissal of the underlying bankruptcy case entailed dismissal of the adversary and therefore impeded certain discovery is erroneous. Adversary proceedings in Bankruptcy Court and the principal bankruptcy case are two distinct proceedings. Notwithstanding the general rule that related proceedings are generally dismissed, nothing in the statute governing jurisdiction granted to the Bankruptcy Courts prohibits the continued exercise of federal bankruptcy jurisdiction over an adversary proceeding which arose in or was related to a bankruptcy case following dismissal of the principal bankruptcy case. *See, e.g., In re Morris*, 950 F.2d 1531, 1533–1534 (11th Cir.1992); *In re Churchfield Management & Inv. Corp.*, 122 B.R. 76, 81 (Bankr.N.D.Ill.1990); *In re Tim Wargo & Sons, Inc.*, 107 B.R. 626 (Bankr. E.D.Ark.1989); *In re Kost*, 102 B.R. 834, 835 (D.Wyo.1989); *In re Tennessee Valley Center For Minority Economic Dev., Inc.*, 99 B.R. 845, 846 (Bankr.W.D.Tenn.1989); *Un–Common Carrier Corp. v. Oglesby*, 98 B.R. 751, 753 (S.D.Miss.1989); *Hudak v. Woods*, 91 B.R. 718, 720 (W.D.Pa.1988), *aff'd in part & remanded in part*, 879 F.2d 857 (3rd Cir.) (unpublished opinion), *cert. denied*, 493 U.S. 976, 110 S.Ct. 501, 107 L.Ed.2d 504 (1989).

The record of this case shows that upon approval of the plan for reorganization back in August 1993, the Bankruptcy Court specif-

ically retained jurisdiction over this adversary proceeding and other unresolved matters. *See* Bankr.Case No. 92–07589, D.E. 86. Subsequently, because of debtor-appellant's failure to comply with the plan the case was dismissed on March 24, 1994. *See* Bankr. Case No. 92–07589, D.E. 133. This dismissal was vacated on debtor's motion on September 22, 1994. *See,* Bankr.Case No. 92–07589, D.E. 152. Therefore, dismissal of the underlying case had no effect on the adversary proceeding and its pending discovery. Since the temporary dismissal of the principal case had no effect on this adversary proceeding, the Bankruptcy Court did not abuse its discretion in denying plaintiff's Motion for Continuance.

Although we need go no further, the Court notes that the reasons adduced by Appellant on review of the denial of continuance in the adversary proceeding against Mrs. Vazquez and counsel Orlando Gonzalez, were never argued before the Bankruptcy Court when originally entertaining the Motion for Continuance. Appellant's Motion for Continuance argued in general terms that discovery was obstructed by the dismissal of the principal case. However, the request failed to set forth any specific areas in which additional discovery was necessary. *See* Motion for Continuance, Bankr.Adv. 930010(ESL), D.E. 63. Appellant requested examination of defendant Orlando Gonzalez' protocol, for the first time, on the day of trial, based on his bare suspicions that a certain deed not related to the deeds of Last Will or the Declaration of Separate Property had been tampered. The Court cautioned Appellant that it would order the presentation of the protocol only when the authenticity of any of the deeds was challenged as authentic deeds offered in evidence to the Court. However, after the Court admonished the parties of the seriousness of making unsubstantiated allegations and their duties under rule 11 of the Federal Rules of Civil Procedure, Appellant did not challenge the authenticity of any of the deeds. *See* Transcript of Hearing held on November 21, 1994, Bankr.Adv. 93–0010(ESL), D.E. 87, p. 13–15.

Now, on appeal, Plaintiff–Appellant argues that additional discovery was necessary in

relation to Deed #26 containing the Declaration of Separate Property. A federal appellate court does not consider an issue not passed upon below. *See Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Bancamerica Commercial Corporation v. Mosher Steel of Kansas, Inc.,* 100 F.3d 792, 798 (10th Cir.1996); *Rowlett v. Anheuser–Busch, Inc.,* 832 F.2d 194 (1st Cir. 1987). But even if the Court were to consider Appellant's belated arguments, the Court finds them unmeritorious. The arguments that Appellant makes in this appeal are not even related to Deed number 26 (Deed of Declaration of Separate Property) but rather to a certain certified copy of a deed number 87 that Appellant's expert calligrapher examined in the Registry of Property section Second Carolina. The expert opinion is irrelevant for it is not related to the deed in controversy, nor is it related to irregularities in the notary's protocol. A certified copy is not a document included in the notary's protocol but rather a "transcript" of a deed that is recognized in the protocol[9]. The alleged irregularities noted by the expert are related to the manner in which the copy was signed, but not affecting the contents in the protocol. Based on the foregoing we hold that Appellant's request is unwarranted and further there was no abuse of discretion in denial of continuance.

Finally, Appellant's request that the dismissal against defendant Orlando Gonzalez be vacated is similarly predicated on Appellant's claim that the court below abused its discretion in denying continuance. Since the Court holds that this claim was unwarranted and further that there was no abuse of discretion in the Bankruptcy Court denial of continuance, this request also fails.

## VI. CONCLUSION

For the foregoing reasons, both the Bankruptcy Court's partial judgement of September 14, 1995, and its final judgment of November 20, 1995, are affirmed.

**IT IS SO ORDERED.**

---

**9.** The Law states that a certified copy is:
"A certified copy is the literal, total or partial transcript of a document executed before a notary that is issued by him or the person officially in charge of his protocol, with a certificate regarding the truth of the contents, and the number of folios of the document as well as the signature, sign and flourish, and the seal and flourish of the attesting notary on every page." P.R.Laws Ann. tit. 4 § 2061.