**In the Matter of Enrique S. LAMOUTTE, Bankuptcy Judge.**

**No. 98–MS–093(DRD).**

United States District Court, D. Puerto Rico.

Aug. 31, 2000.

Alfredo G. Hualde-Redin, Condado, PR, pro se.

Maria Susana Costa-De-Hualde, Condado, PR, pro se.

Legal Conjugal Partnership of Alfredo G. Hualde-Redin and Maria Susana Costa-De-Hualde, Condado, PR, pro se.

Paul Martin Hualde-Costa, Condado, PR, pro se.

Ivette Berrios, San Juan, PR, for Royal Bank of Puerto Rico, Banco Bilbao Vizcaya-Puerto Rico, Juan Net, defendants.

Mildred Caban-Flores, Goldman, Antonetti & Cordova, San Juan, PR, for Yvonne Palerm-Cruz, Ramon Dapena, Goldman, Antonetti, Cordova, Axtmeier Law Firm, American International Insurance Company of Puerto Rico, defendants.

Isabel Abislaiman-Quilez, Axtmayer, Adsuar, Muniz & Goyco, San Juan, PR, for Ruben Rodriguez, defendant.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Vinicio Medrano Díaz has filed before the court a Petition against Bankruptcy Judge Enrique S. Lamoutte, requesting that he be ordered to be **recused** from further bankruptcy proceedings and further requesting that the District Court **discipline** him.

## I. BACKGROUND

The instant petition is but an additional chapter to an eight-year litigious saga involving the ownership of a winning electronic lottery ticket of $3.5 million dollars to be paid by the Commonwealth of Puerto Rico in fifteen (15) annual installments. The ticket was purchased on December 6, 1991, ownership being disputed between Vinicio Medrano Díaz (hereinafter referred to as "Medrano") and Teresa Vázquez Botet (hereinafter referred to as "Vázquez"). The ticket was purchased on the eve of

marriage between Medrano and Vázquez. Medrano and Vázquez were subsequently married on December 20, 1991, and divorced on November 13, 1992. Vázquez initiated legal proceedings in the Superior Court of Puerto Rico claiming ownership of fifty percent (50%) of the winning share of the lottery ticket. (Medrano was originally in possession of the ticket and as possessor of the ticket registered himself as the owner as allowed under local law.) While the case was pending on December 27, 1992, Medrano filed for bankruptcy protection under Chapter 11 in the Bankruptcy Court for the District of Puerto Rico. The bankruptcy petition was later converted to a Chapter 7 proceeding. The Superior Court claim of Vázquez was removed to the Bankruptcy Court by Medrano as an advisory proceeding seeking declaratory judgment as to the ownership of the winning electronic lottery ticket, Vázquez claimed fifty percent ownership and Medrano alleging exclusive whole ownership.

Final judgment in favor of Vázquez was entered by the Bankruptcy Court, *Medrano Diaz v. Vázquez Botet (In re Medrano Díaz)*, 182 B.R. 654 (Bankr.D.P.R.1995). The District Court affirmed as well as the First Circuit. *Medrano Diaz v. Vázquez–Botet*, 204 B.R. 842 (D.P.R.1996); affirmed sub nom *Medrano Díaz v. Gonzalez Hernández*, 121 F.3d 695 (1st Cir.1997).[1]

The Bankruptcy Court as well as the District Court found that the ticket was purchased with monies of both Vázquez and Medrano and that they had entered into an agreement to share separately but on equal basis the winning lottery ticket. Before the winning second installment was paid the marriage faltered and divorce proceedings ensued. The findings of the court as to separate equal ownership of the lottery ticket were mostly based on documentary evidence signed by Medrano. Prior to divorce proceedings Medrano executed several public documents before Notary Public Orlando González, Medrano's attorney, clearly reflecting his intent as to the scope of the agreement sharing on equal basis the lottery price. Medrano executed Public Deeds of Last Will and Testament and Declaration of Separate Property stating that the lottery ticket was purchased with monies of both Vázquez and Medrano and that the prize was to be equally shared between then. *Medrano Díaz v. Vázquez–Botet*, 204 B.R. at 845–47. Medrano and Vázquez further later signed a Stipulation to be used at the divorce proceedings wherein sharing of the prize at fifty percent each was recognized.[2] Me-

---

**1.** The First Circuit Court of Appeals affirmed stating briefly that "we affirm the judgment below for substantially the reasons set forth in the well-reasoned opinion of the District Court and the Bankruptcy Court respectively" (citations omitted).

**2.** The Testament of Mr. Medrano stated the following:

"SECOND: Testator, in consequence wishes to dispose and hereby disposes that the free half goes and that it be for his wife, Mrs. Teresa Vázquez Botet, without condition or restraint whatsoever. Manifests and recognizes that the lottery prize which was bestowed upon him the past sixth day of December, nineteen hundred ninety-one, one week before getting married to Mrs. Teresa Vázquez Botet, was bought with money that she gave him and that the agreement was and as such he reaffirms that half the prize is her separate property notwithstanding that the same appears inscribed or registered under his name." Deed Number 25, Open Testament, executed on February 18, 1992, par. II. (The deed was later superseded by a later will.) In the Deed of Declaration of Separate Property Mr. Medrano stated that:

"FIRST: That the sixth day of December nineteen hundred ninety-one, [they] were blessed with the prize of the Puerto Rico Loto, ascending to the sum of THREE MILLION FIVE HUNDRED THOUSAND DOLLARS ($3,500,000)".

"SECOND: That recognizing the appearing that on the date in which they received the prize they were not yet legally married, they wish to recognize for all pertinent legal purposes and to that effect recognize and state that the amount adjudged by virtue of said prize or to be adjudged, belongs to each of them by equal shares and that said participation is their separate property." Deed number 26, Declaration of Separate

drano hence left a crystal clear documentary trail establishing an agreement to share the prize notwithstanding that he was in possession of the original lottery ticket and registered the prize originally in his name.[3]

Notwithstanding, the overwhelming documentary evidence signed by Medrano he insists that since the Electronic Lottery Law establishes that the possessor of the ticket as the only owner, he was entitled to all the proceeds because he registered the winning ticket in his name when claiming the prize. The Bankruptcy Court and the District Court readily disposed of this argument.

Based on a counterpart section of the Electronic Lottery Law, P.R. Laws Ann. tit. 15 § 810, contained in the Puerto Rico Lottery Law, P.R. Laws Ann. tit 15 § 122(a)(2), the Supreme Court of Puerto Rico in *In re Mieres Calimaño*, 76 D.P.R. 699 (1954), held that although "[F]or the purpose of prize payment, the holder of the ticket presenting it for collection shall be deemed the only owner. This does not imply, however, that the payment of the prize to the holder or bearer of a winning ticket is a definite, absolute, and unassailable adjudication of the ownership right to such prize, to the prejudice of a third party ... *a third person claiming to be the legitimate owner of the prize or to have some participation in it, is not precluded from making a claim in court.*" (Emphasis ours.)[4] Ms. Vázquez Botet is precisely a third party making a strong claim of participation in the prize in a court pro-

ceeding as authorized by the Supreme Court notwithstanding that the prize was registered in Medrano's name.

In this latest skirmish, Medrano alleges bias of the bankruptcy judge requesting the court's intervention to recuse and/or discipline him under Local Rule 2115.

## II. PETITIONER'S REQUEST

Almost a year after the First Circuit Court of Appeals dismissed Medrano's appeal Medrano once again resumes litigation hostilities. The subject this time is the Bankruptcy Judge who decided the case.

Medrano imputes misbehavior mandating recusal of the Bankruptcy Judge as he should have disqualified himself from the case because the judge allegedly knew from the Air National Guard Medrano's counsel, counsel Orlando Gonzalez.[5] Gonzalez, as counsel for Medrano, had prepared the public documents signed by Medrano confirming Vázquez' fifty percent ownership in the lottery ticket. The Bankruptcy Judge prior to deciding all matters in the case, informed the parties in a pretrial procedure that Orlando González was in the Air Force National Guard but that he had no personal relationship with him, had no personal contact with him, had no relationship with him in the National Guard and further he was not in the same division of Command as Lieutenant Coronel González.[6] No objection, concern nor recusal was then contemporaneously made by Medrano. An attack ensued after the Judge rendered a ruling following a bench

---

Property, executed on February 18, 1992, par. I and II.
Similar language was agreed upon but subsequently not used for the purposes of mutual consent divorce proceedings.

3. Bank accounts were opened to deposit the proceeds of the winning lottery ticket. These accounts were indisputably controlled by Vázquez.

4. The court expressly held that the law "regulates the relationship between the ticket purchasers and the government;" however, the

ownership of the ticket itself amongst various private persons is left for "a claim in court." *In re Mieres Calimaño, Id.*

5. Orlando González as a notary public drafted the public deeds transcribed at footnote number 2 infra. Pursuant to Puerto Rican Law a notary public does not act as lawyer for either sides but acts in public trust. *In re Meléndez Pérez*, 104 D.P.R. 770, 775–76 (1976).

6. The Bankruptcy Judge was then a major. See Docket No. 110 in Adv. No. 93–0010(ESL).

trial held on November 21–22, 1994, (Docket No. 78, 79), the ruling was precisely on the matter of the determination by the court on sharing separately and equally the $3.5 million lottery prize. After the Bankruptcy Judge's ruling, Medrano filed an affidavit seeking to disqualify the judge. An Opinion and Order was issued by the Judge, (Docket No. 110), wherein the Judge denied the request not only based on the fact that he did not have a personal or professional Air Force National Guard relationship with attorney González but also based on the legal ground that any recusal was waived by Medrano's delay. *In re Cooke,* 160 B.R. 701, 704 (Bankr. D.Conn.1993); *Delesdernier v. Porterie,* 666 F.2d 116, 121–23 (5th Cir.), cert. denied 459 U.S. 839, 103 S.Ct. 86, 74 L.Ed.2d 81 (1982). The ruling of the Judge not to disqualify himself was not appealed to the District Court and was not even treated by Medrano on the subsequent appeal as to the ownership of the lottery ticket to the District Court in a "perfunctory manner," which would have constituted notwithstanding a waiver of the issue on appeal. *Reyes García v. Rodríguez and del Valle,* 82 F.3d 11 (1st Cir.1996) (quoting *Ryan v. Royal Ins. Co.,* 916 F.2d 731, 734 (1st Cir.1991)) ("issues adverted in appeal in a perfunctory manner, unaccompanied by some developed argument, are deemed to have been abandoned").

■ Since plaintiff failed to timely appeal the issue of the recusal of the Judge, Medrano is now barred by the express terms of the doctrine of "res judicata" from relitigating the issue under both state and federal law. P.R. Laws Ann. tit 31 § 3343 and tit. 32 § 1793; *Colón v. San Patricio Corporation,* 81 D.P.R. 242, 264 (1959); *Worldwide Food Distributors Inc. v. Alberic Colón,* 92 J.T.S. 114, 1993 WL 840035 *3 (P.R. June 30, 1993); *Futura Dev. Corp. v. Centex Corp.,* 761 F.2d 33, 42

(1st Cir.1985); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 814 F.2d 844, 846 (1st Cir.1987); *Porn v. National Grange Mutual Insurance Co.,* 93 F.3d 31, 34 (1st Cir.1996)("the doctrine of 'res judicata' generally binds parties from litigating or relitigating any issue that was or could have been litigated in a prior adjudication and prevents claim splitting"). *Futura Development Corp. v. Centex,* 761 F.2d at 42. Hence, the court is barred from removing the Bankruptcy Judge on this ground via the current collateral attack.[7]

Medrano further pretends to relitigate against "res judicata" principles in this proceeding the property issue of the separate equal ownership of the lottery ticket previously disposed by the Bankruptcy, District and Circuit Court's opinions on the matter. The attempt is frivolous because said issue has already been decided amongst the parties. *Futura Development Corp. v. Centex,* 761 F.2d at 42.

■ Medrano also imputes to the Bankruptcy Judge as grounds for removal, misbehavior because the file of the case at the time of a filing was in the Judge's chambers and inaccessible to him ("...Judge Lamoutte requested the file and now this (sic) is not available for inspection at no (sic) time", § 6 of Medrano's Petition). The file of the case was in the Judge's Chambers simply because Medrano had filed on March 26, 1998, a Motion for Reconsideration And To Set Aside All Orders Entered, (Docket No. 226), which was at the time of Medrano's filing in the instant petition, (July 11, 1998), unresolved. (The motion was subsequently resolved by Judge Lamoutte on July 30, 1998.) Hence, the alleged misconduct as grounds for recusal is meritless.

■ Medrano further request removal of the Bankruptcy Judge grounded on alleged misbehavior because the Judge "surreptitiously" ordered the delivery of half of

**7.** The clear literal language confirming separate equal ownership of the lottery ticket as expressed by Medrano in public documents transcribed in note number 2 infra convert to irrelevant the allegation of Judge Lamoutte acquaintance with counsel Orlando Gonzalez at the National Guard.

the prize monies to Vázquez on June 29, 1998. The sharing equally of the prize monies matter was decided by the District Court and affirmed by the First Circuit Court of Appeals on August 5, 1997. *Díaz v. Hernández*, 121 F.3d 695. Hence, the Judge was merely complying with execution of a judgment that was affirmed by the District and Circuit courts. Medrano's then pending motion to set aside judgment further was obviously untimely under Fed.R. 60(b) (applicable in bankrupting by Fed. R. Bank. P. 9024) since the motion was filed more than three years after judgment by the Bankruptcy Court. *Scola v. Boat Frances, R., Inc.* 618 F.2d 147, 154 (lst Cir.1980). Further, alleged legal errors on the merits as grounds of relief under Rule 60(b) may not be considered as ground for relief. *Silk v. Sandoval,* 435 F.2d 1266, 1267 (1st Cir.) cert. denied sub nom. *Silk v. Kleppe,* 402 U.S. 1012, 91 S.Ct. 2189, 29 L.Ed.2d 435 (1971). (The United States Bankruptcy Appellate Panel for the First Circuit in the instant case affirmed unanimously on May 21, 1998, the decision of Bankruptcy Judge Lamoutte refusing to set aside the judgment under Rule 60(b)(4)[8] in the case of *Vinicio Medrano v. Teresa Vázquez Botet,* 98–073, based on the reasoning set forth above. The appeal was dismissed for lack of prosecution on March 15, 2000, by the First Circuit Court of Appeals.) The Bankruptcy Judge, therefore, did not incur in any reproachable conduct meriting removal by entering an order allowing Vázquez to withdraw the monies which belonged to her by final order entered by the Circuit Court of Appeals.

Hence, the court concludes that the Petition of Plaintiff Vinicio Medrano Díaz requesting that Judge Lamoutte be barred from further participation in the bankruptcy case is patently frivolous.[9]

■ The District Court lacks jurisdiction to entertain any request to discipline Judge Lamoutte for allegedly participating in a case wherein he should have recused himself for allegedly knowing Medrano's counsel Orlando González, a fellow National Guard Officer. The jurisdiction for disciplining a Federal Bankruptcy Judge lies exclusively in the Judicial Council of the First Circuit, 28 U.S.C. § 372(c)(1). (Judicial discipline of a bankruptcy judge requests are to be filed in the Clerk's Office of the Circuit Court to be subsequently entertained by the Judicial Council of the Circuit if deemed appropriate by the Chief Judge.)[10]

**Hence, the Miscellaneous Proceeding seeking recusal of Bankruptcy Judge Enrique S. Lamoutte is DENIED. The District Court lacks jurisdiction to entertain disciplinary actions against a Bankruptcy Judge since jurisdiction lies exclusively in the Judicial Council of the Circuit Court.**

8. Medrano further requested in the Rule 60(b)(4) motion to set aside the judgment based on lack of jurisdiction of the court which was also denied because the Bankruptcy Court had jurisdiction based on the removal brought by Medrano himself to decide the adversary proceeding on the ownership of the asset. *Hoult v. Hoult,* 57 F.3d 1, 6 (1st Cir. 1995).

9. Since the Circuit Court affirmed the District Court, Medrano has filed various unsuccessful collateral attacks before the United States Bankruptcy Appellate Panel for the First Circuit Court attempting to overturn the decision on the ownership of the lottery ticket. (See BAP No. 98–73; 98–054; 98–077; 99–014; 99–009.) The above captioned case constitutes but another example. Counsel Genaro Rodriguez Gerena is forewarned that the court considers that the matter of ownership of the lottery ticket has been litigated ad nauseam and hence further litigation invites sanctions against counsel pursuant to FRCP 11.

10. The request seems patently frivolous since the decision of the Bankruptcy Judge affirmed by the District Judge and the Circuit Court was based on written notarized public documents and deeds signed by Medrano recognizing joint equal ownership of the winning lottery ticket. Allegations that the Notary Public did not explain to Medrano the implications of the signed documents seem groundless based on the plain simple language of the public documents, see notes # 2 and # 6 infra.

The Clerk of the Court is ordered to close the instant case.

**IT IS SO ORDERED.**