**In re Peter ACKHOFF, Debtor.**

**David W. Allard, Trustee, Plaintiff,**

**v.**

**Peter Ackhoff, Steven Annas, Peter DeAngelo and Douglas Carreri, Defendants.**

**Bankruptcy No. 99–54903–R.**
**Adversary No. 00–4127.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Feb. 22, 2001.

Thomas J. Budzynski, Clinton Township, MI, Mark P. McLoughlin, Detroit, MI, for debtor.

Rodney M. Glusac, Detroit, MI, Carl F. Schier, Birmingham, MI, for trustee.

*Opinion Regarding Motions for Summary Judgment*

STEVEN W. RHODES, Chief Judge.

This matter is before the Court on motions for summary judgment filed by the trustee, the debtor and the non-debtor defendants. For the reason stated below, the trustee's motion is granted and the defendants' motions are denied.

I.

On September 3, 1999, the debtor played in a golf tournament with the non-debtor defendants as the other members of his foursome. The debtor made a hole-in-one on the eighth hole. The prize for the hole-in-one was a 1999 Cadillac Escalade.

On September 22, 1999, the debtor filed his chapter 7 petition. As of that date, he had not yet received the vehicle. The debtor listed on his Schedule B a "possible hole-in-one contest prize" as property of the estate, which he valued at $3,000. On Schedule C, the debtor claimed the prize as exempt in the amount of $2,500 under § 522(d)(5).

At the debtor's meeting of creditors on October 20, 1999, he testified that the "possible hole-in-one contest prize" listed on his schedules was his interest in the car. The debtor further testified that he scheduled the prize as "possible" because there was some question as to whether the tournament organizers followed the proper procedures for insurance purposes and whether he would actually receive the prize. The debtor also testified that he believed he was only entitled to a one quarter interest in the car because he had made an oral agreement with the other members of his foursome that if any of them won a prize at the tournament they would split the prize equally between them.

The trustee sent letters to the debtor's attorney on November 15, December 3, and December 20, 1999, requesting all pertinent documents and information regarding the hole-in-one prize. On December 20, 1999, the debtor's attorney responded with the requested documents indicating that on November 24, 1999, the debtor took possession of the Cadillac, valued at $43,000. The debtor then sold the vehicle to defendant Annas for $36,000. After dividing the proceeds between the four defendants, the debtor received $10,000. Apparently, the debtor then gave Annas an $8,000 credit on the purchase price for Annas's share. Annas gave the debtor a check for $28,000. The debtor then gave DeAngelo and Carreri each $9,000 and kept the remaining $10,000.

The debtor then filed an amended schedule C in which he claimed the net proceeds after taxes of $4,975 exempt under § 522(d)(5). The debtor received a 1099 tax form for $43,000. He then issued to each of the other defendants a 1099 form in the amount of $10,750.

On February 10, 2000, the trustee filed this adversary proceeding complaint. Count I seeks avoidance of unauthorized post-petition transfers. Count II seeks turnover of either the vehicle or $43,000, which represents the value of the vehicle.

The trustee has also filed a separate adversary proceeding complaint against the debtor objecting to the discharge due to concealment of assets. The two adversary proceedings have been consolidated, however, the objection to the discharge has been held in abeyance pending the outcome of this adversary proceeding.

The parties have stipulated to the existence of the oral agreement between the debtor and the non-debtor defendants to split the prize. Following a review of the depositions submitted by the trustee, the Court will accept the stipulation of the parties that there was in fact an oral agreement to split the prize.

## II.

The trustee argues that the Cadillac and the proceeds from the sale of the Cadillac are property of the estate. The trustee contends that the agreement between the debtor and the non-debtor defendants to split the prize merely gave the non-debtor defendants an unsecured claim against the debtor's estate, not any independent property rights in the Cadillac.

The trustee contends that the transfer of the Cadillac to Annas and the $9,000 payments to DeAngelo and Carreri are avoidable pursuant to § 549(a) because they were unauthorized post-petition transfers of property of the estate. The trustee seeks a judgment against Annas for $36,000, which represents the value of the vehicle at the time of the transfer. The trustee also seeks a judgment against DeAngelo and Carreri in the amount of $9,000 each.

In support of his motion for summary judgment on Count II of the complaint seeking turnover, the trustee argues that the debtor had an obligation under § 521(3) to turn over the car to the trustee. The trustee further asserts that Annas must turn over the Cadillac to the trustee pursuant to § 542(a), and pay the trustee the difference between $36,000 and the net proceeds received from the trustee upon sale. The trustee also contends that the proceeds of the sale of the Cadillac are property of the estate under § 541(a)(6). Therefore, Carreri and DeAngelo must turn over, pursuant to § 542(a), the $9,000 they each received from the proceeds.

The debtor contends that the non-debtor defendants were not merely unsecured creditors of the debtor, but that they had an equitable lien on the property. The

debtor argues that in order for the bankruptcy court to recognize an equitable lien, there must have been an inability for the claimant to perfect his lien. The debtor asserts that the non-debtor defendants could not perfect their security interest because the prize had not yet been awarded at the time the petition was filed and therefore the non-debtor defendants could not be listed on the title as secured parties.

The non-debtor defendants argue that because the debtor never held more than a one quarter interest in the vehicle, the distribution of the remaining three quarters of the prize does not constitute a transfer of estate property. The non-debtor defendants also argue that even if the entire prize is property of the estate, they are entitled to an equitable lien against the hole-in-one prize for the costs associated with claiming and preserving the prize. They assert that they have incurred costs, including their share of the Michigan sales tax of $2,580; their share of the license plate fee of $189; $3,655 in capital gains tax on the prize; Annas's cost of insurance of $540; and Annas additional sales tax of $2,580 when he purchased the car from the debtor. The non-debtor defendants contend that the estate will be unjustly enriched if they are not granted an equitable lien.

### III.

■ Section 541(a)(1) defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "By including all legal interests without exception, Congress indicated its intention to include all legally recognizable interests although they may be contingent and not subject to possession until some future time." *Rau v. Ryerson (In re Ryerson),* 739 F.2d 1423,

1425 (9th Cir.1984) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 175–76 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6136. *See also In re Yonikus,* 996 F.2d 866, 869 (7th Cir.1993) (Section 541 includes "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative[.]")).

■ Although the issue of what property is included in the estate raises an issue of federal law, a debtor's property rights are created and defined by reference to state law. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

■ The defendants rely on *Miller v. Radikopf,* 394 Mich. 83, 228 N.W.2d 386 (1975), in support of their position that at the time the debtor filed his petition, he possessed only a one quarter interest in the prize. In *Miller,* the court held that an agreement to share any winnings from an Irish sweepstakes was an enforceable contract. The court found the mutual promise to share constituted legal consideration and that "[a] contract based on the exchange of legal consideration is a legal contract and its enforcement does not violate public policy." *Id.,* 394 Mich. at 87, 228 N.W.2d at 387.

However, the issue here is not simply whether the agreement is enforceable, but what effect that agreement had on the estate's interest in the vehicle. The *Miller* case did not hold that the agreement created a separate property interest in the party suing to enforce the contract. It merely concluded that the contract was enforceable. Here, the prize was awarded solely to the debtor. There is no indication in the record that the contest sponsors recognized anyone as the winner other than the party who made the hole-in-one. The non-debtor defendants merely had a claim against the debtor for enforcement of the agreement or for damages for its breach.

In these circumstances, Michigan law does not create a separate property interest in the non-debtor defendants.

The defendants also rely on *Medrano Diaz v. Vazquez–Botet,* 204 B.R. 842 (D.P.R.1996), *aff'd by Diaz v. Hernandez,* 121 F.3d 695 (1st Cir.1997) (Table), in support of their position that the estate holds only a one quarter interest in the prize. In *Medrano Diaz,* just prior to getting married, the debtor and his wife purchased a lottery ticket which subsequently won an approximately $3.5 million prize. The parties were married shortly thereafter, however, they divorced approximately one year later. While proceedings were pending to determine ownership of the lottery prize, the debtor filed his bankruptcy petition. The debtor claimed an exclusive right to the prize. The debtor's ex-wife claimed a 50% separate ownership interest in the prize. The bankruptcy court found in favor of the ex-wife and granted her a 50% interest in the prize. On appeal, the debtor argued that his ex-wife was not entitled to any of the prize proceeds because she did not hold a separate interest in the prize and she failed to timely file a proof of claim in the debtor's bankruptcy. The ex-wife responded that her share of the prize was her separate property before the debtor filed his petition and that the filing of the petition could not operate to divest her of her property.

The district court upheld the bankruptcy court's determination that the parties had purchased the lottery ticket together and that they had agreed to share the prize in equal parts based on evidence that after the parties won the prize, they sought advice from an attorney to try to legally formalize their intention of dividing the lottery ticket in half, owned separately. Further, in the debtor's will, he stated that "their participations in the ticket and prize are their separate property." *Medrano*

*Diaz,* 204 B.R. at 846 n. 4. The evidence further showed that after the parties were married, they continued showing through public manifestations their separate ownership of the lottery prize. The debtor's will also included a declaration of separate property which provided:

That recognizing the appearing [sic] that in the date in which they received the prize they were not yet legally married, they wish to recognize for all pertinent legal purposes and to that effect recognize and state that the amount adjudged by virtue of said prize or to be adjudged, belongs to each of them by equal shares and that said participation is their separate property.

*Id.* at 848 n. 6.

The court further recognized that under Puerto Rican law, the debtor's ex-wife was authorized to have a separate ownership interest in the lottery ticket and prize, recognized by the Electronic Lottery of Puerto Rico. *Id.* at 849.

This case is distinguishable from *Medrano Diaz.* There are no facts evidencing an intent by the parties to create a separate ownership interest in the prize. More importantly, although Michigan law may hold that the contract is enforceable, Michigan law does not create a separate property interest in the prize for the non-debtor defendants.

A case on point is *Sirek v. Dalton (In re Dalton),* 146 B.R. 460 (Bankr.D.Ariz.1992). In that case, before the debtor filed bankruptcy, she and her mother purchased a lottery ticket together and agreed that the winnings would be split equally. The ticket won, and the debtor presented it to the Arizona Lottery. The debtor was entitled to annual payments of $7,204 for 20 years. Her bankruptcy trustee sought a determination that all of the lottery winnings were property of the estate. In agreeing with the trustee, the court noted that the Ari-

zona Lottery did not recognize the claimed interest of the debtor's mother. *Id.* at 463. Similarly here, the promoters of the hole-in-one contest did not recognize any party other than the debtor as the winner of the prize.

## IV.

The debtor also relies on a theory of equitable lien in support of his contention that the non-debtor defendants each held a one quarter interest in the prize. "In the absence of a written contract, an equitable lien will be established only where, through the relations of the parties, there is a clear intent to use an identifiable piece of property as security for a debt." *Senters v. Ottawa Sav. Bank,* 443 Mich. 45, 53, 503 N.W.2d 639 (1993). The court explained the equitable basis for the remedy. " '[E]quity will declare a lien out of considerations of right and justice, based upon those maxims which lie at the foundation of equity jurisprudence.' " *Id.,* quoting from *Kelly v. Kelly,* 54 Mich. 30, 47, 19 N.W. 580 (1884).

However, as the Sixth Circuit has stated in a similar context:

The equities of bankruptcy are not the equities of the common law. Constructive trusts are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors, not from the offending debtor. "Ratable distribution among all creditors" justifies the Code's placement of the trustee in the position of a first-in-line judgment creditor and bona fide purchaser for value, empowered to avoid certain competing interests (and even to nullify the debtor's "preferential" pre-petition payments to otherwise entitled creditors) so as to maximize the value of the estate.

*XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.),* 16 F.3d 1443, 1452 (6th Cir.1994) (footnote omitted).

In *Omegas Group,* the court held that a constructive trust, which is similar to an equitable lien, cannot be imposed by the bankruptcy court. The court stated, "Because a constructive trust, unlike an express trust, is a remedy, it does not exist until a plaintiff obtains a judicial decision finding him to be entitled to a judgment 'impressing' defendant's property or assets with a constructive trust." *Omegas Group,* 16 F.3d at 1451.

Because the imposition of an equitable lien would have precisely the same effect on the ratable distribution to creditors as a constructive trust, this Court concludes that such a remedy cannot be imposed in bankruptcy.

Beyond that, in order to impose an equitable lien, *Senters v. Ottawa Sav. Bank* requires a showing of a clear intent to use an identifiable piece of property as security for a debt. 443 Mich. at 53, 503 N.W.2d 639. In this case, however, nothing in the record suggests that the parties' agreement also included a clear intent to use as security the winner's right to a Cadillac. Rather, the record suggests that the only agreement among the parties was to split the proceeds of the prize. Therefore, this remedy would be not be granted to the defendants even if it were allowed in bankruptcy.

For the foregoing reasons, the Court concludes that the Cadillac is property of the estate and that the trustee is entitled to relief. The trustee's motion for summary judgment is granted and the debtor's and non-debtor defendants' motions for summary judgment are denied.

The parties shall submit an appropriate order within 10 days.