UNITED STATES, Appellee,

v.

Karla Lee GRAHAM, a/k/a Karla Zahoruiko, Defendant—Appellant.

No. 97–1274.

United States Court of Appeals, First Circuit.

Heard Oct. 8, 1997.

Decided June 5, 1998.

Bjorn Lange, Assistant Federal Defender, Federal Defender Office, for appellant.

Jean B. Weld, Assistant United States Attorney, with whom Paul M. Gagnon, United States Attorney, was on brief for appellee.

Before BOUDIN, Circuit Judge, GODBOLD * and CYR, Senior Circuit Judges.

GODBOLD, Senior Circuit Judge.

Karla Graham appeals from her conviction and sentence for making false statements in loan documents presented to a federally insured bank in violation of 18 U.S.C. § 1014. We affirm both.

## I. Factual and Procedural History

The jury was entitled to find the following facts, either as undisputed or based on sufficient evidence.

Between 1987 and 1989 Karla Graham worked as a mortgage account executive for Dime Real Estate Services of New Hampshire (Dime–NH)a wholly owned subsidiary of Dime Savings Bank of New York (Dime–NY) that provided residential mortgage loans. Graham originated the loans and was paid on commission. During this time the bank had a low-documentation lending program that approved loan applications without verification of income, employment or assets as long as the borrowers could make a twenty percent down payment with their own funds. Graham and her co-defendants found ways to avoid the down payment requirement and submitted fraudulent loan applications to the bank's underwriters in Massachusetts (Dime–MA). Dime–NY provided the funds for these mortgages, and all mortgages were eventually assigned to Dime–NY. Dime–NY is a federally chartered savings bank with deposits insured by the Federal Deposit Insurance Corporation (FDIC).

After a large scale investigation into Dime's operations, a federal grand jury returned a sixty-count indictment against Graham and six co-defendants. Graham was charged in eleven counts of the indictment. Two of these counts were severed and later dismissed by the government. Graham was tried by a jury on the remaining counts. Count 1 charged her with conspiring to make false statements for the purpose of influencing Dime–NY on loan applications in violation of 18 U.S.C. § 371. Counts 17 through 26 charged her with knowingly submitting materially false statements on ten different loan applications, HUD–1 Settlement Statements, and Fannie May Affidavits for the purpose of influencing Dime–NY in violation of 18 U.S.C. § 1014. The jury returned a verdict of guilty on counts 18 and 25 and not guilty on the remaining counts. The district court sentenced her to eighteen months imprisonment on each count to be served concurrently and a term of one year supervised release.

## II. Discussion of the Issues

### A. Selective Prosecution and Conflict of Interest

■ Graham asserts that her conviction violated her right to due process because it was the product of selective prosecution on the part of the government. She maintains that the district court erred in failing to hold an evidentiary hearing on the issue of selective prosecution. Graham points to the fact that Dime Bank–New York was not indicted on criminal charges after it gave a $2,000,000 donation to a nonprofit housing program in Manchester, New Hampshire. She also notes that the U.S. Attorney in charge of the case resides in the New Hampshire community that received the donation. Further complicating this picture is the fact that Dime-NY was partially owned by the FDIC and that the decision not to indict the bank came just before a successful public offering of shares in the bank, thus benefitting the FDIC by ensuring that the sale would not be

---

* Of the Eleventh Circuit, sitting by designation.

marred by threats of future criminal liability. By cumulating all of these circumstances, Graham suggests that she was selectively prosecuted either because she did not have the wealth to avoid criminal liability through civic contributions or because a government conflict of interest kept the bank from being prosecuted.

■ An improper selective prosecution arises when a defendant "has been singled out for prosecution when others similarly situated have not been prosecuted and the prosecutor's reasons for doing so were impermissible." *U.S. v. Magana*, 127 F.3d 1, 8 (1st Cir.1997); *see also U.S. v. Peñagaricano–Soler*, 911 F.2d 833, 837–38 (1st Cir.1990). The prosecutor is presumed to have acted "in good faith for reasons of sound governmental policy." *Peñagaricano–Soler*, 911 F.2d at 837 (citing *U.S. v. Saadé*, 652 F.2d 1126, 1135 (1st Cir.1981)). But if the defendant alleges facts that tend to show that she has been selectively prosecuted and that raise a reasonable doubt about the propriety of the government's purpose, then she is entitled to an evidentiary hearing unless the government "puts forward adequate countervailing reasons to refute the charge and ... the court is persuaded that the hearing will not be fruitful." *U.S. v. Goldberg*, 105 F.3d 770, 776 (1st Cir.1997) (internal quotations and citations omitted).

Although Graham may have presented enough evidence to create a prima facie case of selective prosecution by suggesting that the bank's monetary charitable contribution precluded its prosecution, the government refuted this presumption with adequate reasons for its decisions. Specifically the government offered a list of eight factors it considered in its decision not to indict Dime–NY: (1) Dime's merger with Anchor in 1995; (2) the fact that current senior management was not in those positions during the years of suspected criminal activity; (3) the bank and its shareholders had suffered significant losses from the fraudulent conduct of former employees; (4) the newly formed institution had implemented stringent fraud detection procedures; (5) the rehabilitative step of contributing $2,000,000 to the Manchester Neighborhood Housing Services, Inc.; (6)

the implementation of the Dime Borrowers Associations Borrowers Assistance Program II; (7) payment of $150,000 to the Dime Borrowers Associations; and (8) the continued cooperation of Dime–NY in the ongoing grand jury investigation.

The district court considered this list of factors and found that it adequately explained the government's actions and that no evidentiary hearing on the issue of selective prosecution was needed. The court further found that the accusations of government conflict of interest were not substantial enough to raise any presumption of prosecutorial misconduct.

■ We review a district court's decision not to hold an evidentiary hearing on selective prosecution for abuse of discretion. *Goldberg*, 105 F.3d at 776 (citing *U.S. v. Gary*, 74 F.3d 304, 313 (1st Cir.), *cert. denied*, 518 U.S. 1026, 116 S.Ct. 2567, 135 L.Ed.2d 1084 (1996)). In deciding whether the district court should have granted an evidentiary hearing on the issue of selective prosecution we are faced with a "judgment call— tempered on appeal by the deferential standard of review—as to the force and specificity of the allegations, the strength of the response, and the likelihood that a hearing would be helpful." *Goldberg*, 105 F.3d at 776 (citing *U.S. v. López*, 71 F.3d 954, 963–64 (1st Cir.1995), *cert. dismissed*, 518 U.S. 1057, 117 S.Ct. 38, 135 L.Ed.2d 1129 (1996)). In this case the district court carefully considered both Graham's allegations and the government's explanation before denying an evidentiary hearing.

■ Although the timing of the donation may have created a reasonable doubt about the propriety of the government's purpose, we agree that the government adequately refuted the charge so that a hearing was not necessary. Furthermore we also agree that Graham's allegation of conflict of interest concerning the FDIC's financial interest in the bank does not create a presumption of improper prosecutorial selection. We have found no case law to support the preclusion of the Department of Justice from cases involving banks in which the FDIC has an interest. Accordingly, we find no abuse of

the district court's discretion in denying Graham's request for an evidentiary hearing or in denying her motion to dismiss.

### B. Sufficiency of the Opening Statement

 Graham contends that she should have been granted a judgment of acquittal after the government's opening statement because it failed to point to proof for every element of each count contained in the indictment. Graham concedes that the government did mention proof for the elements of the two counts upon which she was convicted. The decision to grant a motion for acquittal after a prosecutor's opening statement is discretionary and should be made only where the statement contains a clearly admitted fact that must defeat its case. *See U.S. v. Ingraldi,* 793 F.2d 408, 414 (1st Cir.1986); *U.S. v. Capocci,* 433 F.2d 155, 158 (1st Cir. 1970). Furthermore, we have held that a district court's denial of a motion for acquittal on the basis of the government's opening statement is not reviewable and that any error in this respect can be raised in a challenge to the sufficiency of the evidence. *Ingraldi,* 793 F.2d at 414.

 Graham asserts that the district court erred by failing to recognize its discretion to grant the motion. Instead the district court correctly recognized that it did not have the discretion to grant a motion for acquittal at the close of the government's opening statement in this situation. The prosecutor admitted no fact that clearly defeated the government's case. Failure to outline all of the evidence in the opening statement did not create a right to an acquittal. *See Ingraldi,* 793 F.2d at 414. In fact the government does not have an obligation to make any opening statement. *Id.*

 We have no power to review the denial of Graham's motion for acquittal after the government's opening statement, but even if we did, we would find that the district court did not err.

### C. Sufficiency of the Evidence

 Graham was convicted of violating 18 U.S.C. § 1014, which makes it unlawful to "knowingly make[ ] any false statement or report, or willfully overvalue[ ] any land, property or security, for the purpose of influencing in any way the action of ... any institution the accounts of which are insured by the Federal Deposit Insurance Corporation." 18 U.S.C. § 1014. Graham contends that her conviction was insufficiently supported because the government failed to prove that she purposefully sought to influence a federally insured bank. Dime–NH, out of which Graham operated, is not insured by the FDIC. She contends that at the most, the evidence showed that she intended to influence Dime–NH or Dime–MA, which approved the mortgage applications. However Dime–NH and Dime–MA are wholly owned subsidiaries of Dime–NY, which is a federally insured institution. Dime–NY was the entity actually financing all of Graham's mortgages and all mortgages were eventually assigned to it. Nonetheless, Graham asserts that because she was based in New Hampshire and submitted all of her documents to the Dime–NH office, the government failed to prove that her purpose was to influence a federally insured bank.

Graham's assertion fails for two reasons. First, this court has held that "the government does not have to show the alleged scheme was directed solely toward a particular institution; it is sufficient to show that defendant knowingly executed a fraudulent scheme that exposed a federally insured bank to a risk of loss." *U.S. v. Brandon,* 17 F.3d 409, 426 (1st Cir.1994) (holding that "it is also unnecessary for the government to prove that a defendant knows which particular bank will be victimized by his fraud as long as it is established that a defendant knows that a financial institution will be defrauded.") (citing *U.S. v. Barakett,* 994 F.2d 1107, 1110–11 (5th Cir.1993); *U.S. v. Morgenstern,* 933 F.2d 1108, 1114 (2d Cir.1991)).[1]

---

1. Although the quoted language from *Brandon* involved a conviction under 18 U.S.C. § 1344, rather than § 1014, the language and elements of the two statutes are so similar that the logic of *Brandon* applies here. *Brandon* involved a conviction under both § 1344 and § 1014 and the court interpreted the knowledge requirement in both statutes as the same. *See Brandon,* 17 F.3d at 425 n. 13 ("We find the language of § 1014 sufficiently similar to § 1344 to warrant a similar

In this case as in *Brandon*, proof that Graham knew she was defrauding a bank was sufficient to prove a violation of the statute.

Second, even if the statute required that the government prove that Graham knew she was fraudulently influencing a federally insured bank, the evidence offered by the government was sufficient to do so. Graham was a loan originator for Dime–NH, and she had been sent to training at Dime–NY. The evidence showed that at this training she was informed of the history and structure of Dime Bank and was given instruction on all of its loan programs. In fact Graham admitted that she often relied on Dime Bank's size and prominence to solicit new borrowers. Given the small size of the New Hampshire operation, she must have been referring to its parent, Dime–NY. Graham was not an unsophisticated private borrower, but an employee of Dime Bank specifically instructed on how the loan process worked. This circumstantial evidence was sufficient to prove that she understood that Dime–NY ultimately provided the funding for the loans although they originated in New Hampshire and were approved by Dime–MA.

The government offered sufficient evidence to support Graham's convictions under 18 U.S.C. § 1014.

### D. The Court's Questioning of the Witnesses

■ Graham contends that the trial court's questioning of certain witnesses deprived her of a fair trial and created prejudice in favor of the government. Because Graham failed to contemporaneously object to the court's comments, we review the district court's questioning for plain error. Fed.R.Crim.P. 52(b).

■ "A trial judge retains the common law power to question witnesses and to comment on the evidence." *U.S. v. González–Soberal*, 109 F.3d 64, 72 (1st Cir.1997) (citations omitted). After reviewing the instances of which Graham complains we find no error

conclusion about Congress'[s] intent with respect to the knowledge requirement in the bank fraud statute.").

on the part of the district court. At most, the court sought to clarify testimony given by the witnesses in question and helped to move the proceedings along in an orderly fashion. Considering the wide latitude granted a trial judge in managing a trial, we find no error so obvious that it could rise to the level of substantial and fundamental prejudice required by plain error review. *See U.S. v. Ortiz*, 23 F.3d 21, 26 (1st Cir.1994) (discussing plain error standard of review).

### E. Loss Calculation for Sentencing

■ Although the two counts on which Graham was convicted involved no loss to the victim, she was sentenced based on related, acquitted conduct after the district court found by a preponderance of the evidence that she had participated in a conspiracy that resulted in a loss of $1.46 million to the victim. This loss resulted in a total offense level of 17 which imposes a sentencing range of 24–30 months. After Graham pointed out that the loss attributed to her was substantially higher than the loss attributed to other similarly situated defendants who had cooperated with the government, the government recommended a downward departure for Graham on the ground that the loss figure overstated her culpability. The district court agreed and granted Graham a two-level downward departure resulting in a sentence of 18 months on each count to be served concurrently.

Graham contends that the disparity in loss calculations violated her right to due process and equal protection because it was the result of sentencing factor manipulation. In response to the district court's questioning on this issue, the government explained that any disparity was the result of early guilty pleas and cooperation agreements by other defendants.[2] The district court accepted this explanation and Graham did not specifically object to this ruling or ask for an evidentiary hearing on the issue. We find no plain error in the district court's decision.

2. Section 1B1.8 of the sentencing guidelines restricts the government from using self-incriminating evidence provided by cooperating defendants in determining the applicable guideline range for those defendants. USSG § 1B1.8.

Even assuming that Graham could prove that the government improperly manipulated her loss calculation, the district court's downward departure remedied her grievance. "[W]here government agents have improperly enlarged the scope or scale of the crime, the sentencing court 'has ample power to deal with the situation ... by departing from the [guideline sentencing range].'" *U.S. v. Montoya,* 62 F.3d 1, 3 (1st Cir.1995) (quoting *U.S. v. Connell,* 960 F.2d 191, 196 (1st Cir.1992)). To the extent that Graham's appeal suggests that the departure was inadequate, absent an error of law this court has no jurisdiction to consider the extent of a permitted departure. *U.S. v. Webster,* 54 F.3d 1, 4 (1st Cir.1995). We find no such error of law.

### III. Conclusion

We AFFIRM Graham's conviction and sentence under 18 U.S.C. § 1014.