# United States Court of Appeals
## For the First Circuit

No. 00-2116

UNITED STATES OF AMERICA,

Appellee,

v.

ALEXANDER BLASTOS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Torruella, Circuit Judge,

Campbell and Bownes, Senior Circuit Judges.

Bjorn Lange, Assistant Federal Defender, with whom Federal Defender Office was on brief, for appellant.

Jean B. Weld, Assistant United States Attorney, with whom Paul M. Gagnon, United States Attorney, and Michael J. Gunnison, Assistant United States Attorney, were on brief, for appellee.

July 19, 2001

**BOWNES, Senior Circuit Judge.** The defendant-appellant, Alexander Blastos, was convicted by a jury of one count of wire fraud. He was sentenced to sixty months in prison, three years of supervised release, and a special assessment of $100.00. On appeal, the defendant argues that his conviction should be reversed and he should be awarded a new trial because the jury instruction was erroneous. He also contends that, if the conviction is affirmed, the case should be remanded to the district court for resentencing because the district court erred in calculating the "loss" under section 2F1.1(b)(M) of the United States Sentencing Guidelines ("U.S.S.G."). We disagree on both points and affirm the district court.

## I. Background

On January 28, 1999, a grand jury in the District of New Hampshire returned a one count indictment against the defendant, charging him with wire fraud in violation of 18 U.S.C. § 1343. The indictment charged the defendant with devising "a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises." The indictment alleged that the defendant "falsely and fraudulently posed as a man of vast wealth, and used this and other misrepresentations to attempt to obtain at auction a yacht known as the 'Argo' or 'Christina'

-2-

from the Government of Greece."  The yacht had been owned by Aristotle Onassis.  The indictment also alleged that, as part of the scheme and artifice, the defendant obtained and attempted to obtain various other goods and services, including loans, travel expenses, meals, a Mycenaean dagger blade, and yacht management, design, and engineering services.  The indictment listed ten interstate and international telefaxes made or caused to be made by the defendant.

The evidence at trial in fact showed that the defendant posed as a man of great wealth by falsifying loan agreements, investment statements and his net worth.  When in 1993, the defendant bid $2.1 million on the yacht, his bid was accepted by the Greek government.  Over the course of the next year, his charade continued.  He used "his" yacht, which in reality he did not yet own, as collateral for other business ventures and engaging yacht decorators and designers.  The facts make clear that Blastos was far from the wealthy man he pretended to be; for the years 1991 through 1995, the defendant reported income totaling only $2,600.  He was the ultimate con man.

Jury trial commenced on April 4, 2000.  At the close of the government's case, the defendant moved, pursuant to Fed. R. Crim. P. 29, for a directed verdict of acquittal; this motion was denied.  The defendant rested without calling any witnesses.

-3-

He then renewed his Rule 29 motion for a directed verdict of acquittal; this motion was also denied.

The district court instructed the jury and the defendant objected to the jury charge, arguing that "materiality should have been alleged as a separate element of the offense of wire fraud." He also argued that the district court should have instructed the jury pursuant to his proposed jury instruction, which included, inter alia, what the defendant contended was the "materiality" element of 18 U.S.C. § 1343. The district court denied the defendant's objection. The jury returned a guilty verdict. On August 21, 2000, the district court sentenced the defendant to sixty months' imprisonment, three years of supervised release, and a special assessment of $100.00. This appeal followed.

## II. Discussion

### A. Jury Instruction

The defendant first argues that the district court erroneously instructed the jury on the element of materiality. He contends that the district court's instruction failed to comply with the Supreme Court's decision in Neder v. United States, 527 U.S. 1, aff'd after remand, 197 F.3d 1122 (11th Cir. 1999), cert. denied, 530 U.S. 1261 (2000), which held, inter alia, that materiality is an element of wire fraud. The

-4-

government argues that, although the instruction "may not strictly comply with the holding of Neder . . ., the issue of 'materiality' was squarely placed before the jury in the court's instructions . . . [and] the jury verdict would have been the same even if the court had specifically instructed the jury that 'materiality' was an element of 'scheme and artifice to defraud.'"

In Neder, the Court held that "the omission of an element is an error that is subject to harmless-error analysis." 527 U.S. at 15. Assuming arguendo the district court omitted a sufficient materiality instruction, we apply a harmless-error analysis and ask whether the conviction can stand because the error was harmless,[1] that is, whether "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Neder, 527 U.S. at 15 (citing Chapman v. California, 386 U.S. 18, 24 (1967)); see also Sustache-Rivera v. United States, 221 F.3d 8, 18 (1st Cir.), cert. denied, ___ U.S. ___, 121 S. Ct. 1364 (2000); United States v.

---

[1]The government admittedly "splits hairs" when discussing which standard of review we should apply--either "harmless-error" or "plain error"--depending on whether a proper objection was made thereby preserving the argument. We need not discuss the intricacies of this point because we ultimately determine that the defendant's argument cannot survive even a harmless error review.

<u>Escobar-De Jesus</u>, 187 F.3d 148, 162 (1st Cir. 1999), <u>cert.</u>
<u>denied</u>, 528 U.S. 1176 (2000).

The defendant requested that the district court include
the following instruction in its charge to the jury:

The indictment charges the defendant
with Wire Fraud.

In order to sustain this charge, the
government must prove each of the following
elements beyond a reasonable doubt:

First, that there was scheme and
artifice to defraud or to obtain money or
property by false and fraudulent pretenses,
representations or promises, as alleged in
the indictment;

Second, that such pretenses,
representations, or promises were
material[;]

Third, that the defendant knowingly
and willfully participated in the scheme or
artifice to defraud, with knowledge of its
fraudulent nature and with specific intent
to defraud; and

Fourth, that in execution of that
scheme, the defendant used or caused the use
of wire communication in interstate or
foreign commerce as specified in the
indictment.

* * * *

The second element that the government
must prove beyond a reasonable doubt is that
the false and fraudulent representation
[sic] pretenses, representations, and
promises related to a material fact or
matter. A material fact is one which a
reasonable person would consider important

-6-

in determining his or her choice of action in the transaction in question. The government does not have to prove that a victim or victims actually relied on that representation in making a decision.

The district court instructed the jury on the elements of the crime of wire fraud as follows:

> In order to carry its burden of proof with regard to the crime of wire fraud, as charged in the indictment, the government must prove each of the following essential elements beyond a reasonable doubt:
>
> First, the existence of a scheme to defraud or to obtain money or property by means of false or fraudulent pretenses, substantially as charged in the indictment.
>
> Second, the defendant's knowing and willful participation in this scheme with the intent to defraud.
>
> And third, the use of interstate or foreign wire communications, on or about the dates alleged, in furtherance of this scheme.
>
> * * * *
>
> The term false or fraudulent pretenses means any false statements or assertions that concern a material aspect of the matter in question, that were either known to be untrue when made or that were made with reckless indifference to their truth and that were made with the intent to defraud. They include actual, direct false statements as well as half-truths and the knowing concealment of facts.
>
> A material fact or matter is one that has a natural tendency to influence or be

> capable of influencing the decision-maker to
> whom it was addressed. . . .

The Supreme Court has held that "a false statement is material if it has a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed." Neder, 527 U.S. at 16 (alteration in original) (internal quotation marks omitted). After review of the entire record, we hold that no jury could reasonably find that the false and fraudulent pretenses, representations or promises made by the defendant were not material as they had the natural tendency to influence the decisionmaker.

The record establishes that the defendant was a convincing liar. The record is replete with deliberate misrepresentations made by the defendant with the intent to influence the decisionmaker. Some examples of this are as follows.

From the time that the defendant's $2.1 million bid for the yacht was accepted, he constantly assured the Greek government that he had sufficient funds to take possession of the yacht, when in fact he did not. To that end, the defendant directed his assistant, Judith Tonks, to draw up a fictitious payment bond in the amount of $2,122,449 under the fictitious name "Trans Global Guarantee Company, Ltd." This fake bond was

forged with a signature of S. Abraham Goldberg, and was faxed to the Greek government.

The defendant further directed Tonks to send a letter to the representative of the Greek government saying: "To further answer your query in regard to the status of funds, be assured that the $2,146,000 US dollars for the acquisition of the boat is currently and has been available." In a letter sent three months later, the defendant assured the Government of Greece that five deposits representing payment for the yacht would be made to the proper account by the end of the week. A few days later, the defendant directed Tonks to send a telefax stating that he would forward $500,000 from his personal funds, but would need to delay payment in full.

The Government of Greece, however, never saw a penny. The fact that the Greek government did not sell the yacht to the next highest bidder and allowed the defendant to drag his feet for nearly seven months, keeping the yacht off the market for that time, is strong evidence that it relied on the defendant's statements. Others relied on the defendant's fraudulent statements and misrepresentations. For example, the yacht broker testified that she spent six months working on behalf of the defendant and incurred considerable expense in the process. She testified that she relied on the defendant's claim that he

owned the Christina. On this uncontroverted record, no reasonable jury could find that the defendant was anything but a liar and a con man, who deliberately made misrepresentations, with the intent to influence the decisionmaker.

The failure to instruct the jury on "materiality" as a specific element of wire fraud was therefore harmless error. Moreover, we note that the district court gave an instruction on materiality that, although it did not meet the specific requirements of Neder, accomplished the same purpose. Finding that the error was harmless, we affirm the defendant's conviction.

## B.   Sentencing

Having affirmed the defendant's conviction, we turn now to his second argument on appeal, which concerns his sentence. The defendant contends that the district court erred in calculating the "loss" under U.S.S.G. § 2F1.1(b) (1994) and urges us to remand the case to the district court for resentencing. At sentencing, the district court increased the base offense level by twelve levels after calculating the loss to be between $1.5 million and $2.5 million. The district court found a reasonable estimate of the potential or intended loss to be the face value of the $2.1 million fraudulent bond issued by the fictitious Trans Global Guarantee Company Ltd. The

-10-

defendant argues that the loss should be measured only by the actual goods or services rendered to him.

We review the district court's interpretation of the loss provisions of the Guidelines de novo and review its factual findings only for clear error. United States v. Carrington, 96 F.3d 1, 6 (1st Cir. 1996). "In fraudulent loan application cases . . . the loss is the actual loss to the victim . . . . However, where the intended loss is greater than the actual loss, the intended loss is to be used." U.S.S.G. § 2F1.1, application note 7(b). We have held, in United States v. Haggert, 980 F.2d 8, 12 (1st Cir. 1992), that there are two types of fraud:

> The first type of fraud implicates the "true con artist," who never intends to perform the undertaking, such as the terms of the contract or loan repayments, but who intends only to pocket the money without rendering any service in return. The second type of fraud involves a person who would not have attained the contract or loan but for the fraud, but who fully intends to perform. In the latter case, and only in the latter case, is the intended loss not to be considered for sentencing.

Id. at 12-13 (footnote omitted) (citing United States v. Schneider, 930 F.2d 555, 558 (7th Cir. 1991)). It is clear from the record that the defendant was the "true con artist," and therefore that the district court committed no legal error in sentencing the defendant according to the intended loss.

-11-

We have held that "[i]ntended loss need not be determined with precision:  [t]he court need only make a reasonable estimate of the loss, given the available information."  <u>United States</u> v. <u>Stein</u>, 233 F.3d 6, 18 (1st Cir.), <u>cert. denied</u>, ____ U.S. ____, 121 S. Ct. 1406 (2000) (internal quotation marks omitted) (second alteration in original).  Based on the evidence, the district court determined the reasonable estimate of the intended loss to be the face value of the $2.1 million fraudulent bond issued by the fictitious Trans Global Guarantee Company.  After careful review of the record, we hold that this does not constitute clear error.  The district court properly calculated the "loss" provision of the Guidelines and we affirm the defendant's sentence.

### III.  Conclusion

For the reasons stated above, we affirm both the defendant's conviction and his sentence.  **<u>Affirmed.</u>**