**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

Nos. 22-1420
     22-1619

UNITED STATES OF AMERICA,

Appellee,

v.

JOSEPH A. FOISTNER,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Kayatta, Lipez, and Thompson,
Circuit Judges.

Lawrence D. Gerzog for appellant.
Alexander S. Chen, Assistant United States Attorney, with whom Jane E. Young, United States Attorney, was on brief, for appellee.

July 15, 2024

**THOMPSON, <u>Circuit Judge</u>.**

**Overview**

After a multiday bench trial, a district judge in New Hampshire convicted Defendant (a then-attorney representing himself *pro se* with standby counsel) of various financial crimes — including bank and wire fraud, money laundering, and making false statements in bankruptcy. The judge imposed a below-guidelines sentence of 48 months (Defendant had an advisory prison range of 168 to 210 months) and ordered restitution (to the tune of $2,449,352.57) without holding a defense-requested evidentiary hearing on the restitution question (the judge reached that parenthetically-noted number after crediting Defendant with money received from a foreclosure sale of property referred to as 104 Foxberry).

Defendant now presses a two-issue appeal (with subparts), arguing that we must either vacate the conviction and sentence because the judge violated his due-process right to a fair trial, or vacate the restitution order because the judge wrongly denied him an evidentiary hearing. Essentially writing this not-for-publication opinion just for the parties — who (obviously) know the facts, the procedural history, and the legal issues and concepts (tax and bankruptcy concepts, for example) hovering around — we share only what is needed to explain why we *affirm* across the board.

**Due Process**

The parties agree — and we have no reason to doubt — that Defendant's due-process theory is synonymous with a judicial-bias claim.  See United States v. Nueva, 979 F.2d 880, 885 (1st Cir. 1992) (exploring a defendant's unfair-trial claim through the judicial-bias lens).[1]  And contending that the judge appeared — but not actually was — biased against him, his theory that the judge committed an abuse of discretion has three facets.[2]  Putting aside any concerns caused by his not showing that he preserved these arguments below, see Reyes-Garcia v. Rodriguez & Del Valle, Inc., 82 F.3d 11, 14 (1st Cir. 1996), none of his claims has merit.

*Prejudging Guilt*[3]

Defendant complains that the judge's "statements" showed a "predisposition" to find him "guilty."  But his examples do not help his cause.

Defendant says, for instance, that the judge's pretrial comment calling the defense expert's expected testimony "not

---

[1] Defendant thinks that Nueva is an "inappropriate cit[e]" because there — unlike here — the appellant had a jury trial and complained about every adverse trial ruling and comment from the judge.  But nothing he writes detracts from the fact that Nueva examined a fair-trial claim through the judicial-bias prism.

[2] The government writes that because "this was a bench trial," Defendant must be pursuing an "actual bias" claim.  We need not referee that dispute, however, because Defendant's arguments fail even under his own framing.

[3] With some slight tweaks, we basically mimic the subheadings in Defendant's opening brief.

contested" signaled a rush to judgment. We leave to one side all questions about how saying a defense witness's testimony is not contested adversely affects a defendant. The judge's comment accurately reflected the then state of play: as the government notes without contradiction from Defendant, prosecutors "did *not* contest the substance of" the expert's "opinion" (emphasis added). Which leaves Defendant's contention with no oomph. See United States v. Laureano-Pérez, 797 F.3d 45, 69 (1st Cir. 2015) (noting that a judicial-bias claim requires the protesting party to show "serious prejudice"); United States v. Ayala-Vazquez, 751 F.3d 1, 24 (1st Cir. 2014) (ditto).

Defendant also sees "pre-judgment" with the judge's pretrial remark that the defense likely had no basis to seek to exclude documents it claimed the government had improperly obtained. But the judge invited the defense to file an *in limine* motion on those documents. "[W]ait until the government files its exhibit list," the judge said, and then if "you have" "specific objections" about how the government "got them, why they shouldn't come in, state what those . . . are and I'll rule on them." And as the government says without opposition from Defendant, the defense never acted on that invitation. Which takes the sting out of Defendant's assertion. See Laureano-Pérez, 797 F.3d at 69; Ayala-Vazquez, 751 F.3d at 24.

Defendant next attacks the judge's at-trial statement agreeing with the government that one possible reason he (Defendant) claimed so much loss to carry forward for future tax years was to execute "a fraud scheme." And according to Defendant, this statement shows the judge's "predisposition to finding fraudulent purpose" (bolding and capitalization omitted). But Defendant does not quote or paraphrase what the judge said next — that perhaps the defense expert had a sound "explanation" *not* involving fraud and that he (the judge) would *not* "find [Defendant] guilty based on some suspicion" involving a loss carry-forward. Which takes the edge off Defendant's attack. See Laureano-Pérez, 797 F.3d at 69; Ayala-Vazquez, 751 F.3d at 24.

*Overstepping the Judicial Role*

Defendant accuses the judge of wrongly questioning witnesses, giving a witness answers, cutting off defense cross-examination, and having extended talks with the prosecution during the government's and the defense's case. Call us unpersuaded.

Discussing his role at the bench trial, the judge told the parties pretrial that he would be "much more engaged with the lawyers and the witnesses and the evidence" than he would be at "a jury trial" — all to "get to the bottom of what's going on." Ours of course is an adversarial system of justice. And a judge cannot play lawyer for either side. "[A] judge," however, "is not a mere umpire" but rather "'the governor of the trial for the purpose of

- 5 -

assuring its proper conduct[]' and has a perfect right — albeit a right that should be exercised with care — to participate actively in the trial proper."  See Logue v. Dore, 103 F.3d 1040, 1045 (1st Cir. 1997) (quoting Quercia v. United States, 289 U.S. 466, 469 (1933)).  Critically here, Defendant develops no argument supporting his view that the complained-about actions (the judge's questioning, discussions, *etc.*) crossed any legal lines.  Which equals waiver.  See, e.g., United States v. Acosta-Colón, 741 F.3d 179, 193 (1st Cir. 2013) (stressing that a party's not "liv[ing] up to his obligation to develop[] a sustained argument out of . . . legal precedents . . . leads to waiver" of that argument (quotations omitted)).[4]

---

[4] We add the following for what it is worth:

The judge often stepped in to *help* Defendant.  At the close of the government's case, for instance, the judge helped Defendant move for acquittal based on insufficient evidence (a motion the judge ultimately denied).  The judge wanted to preserve Defendant's appellate rights.  "You are incredible," Defendant said.  "Well, I want you to get a fair proceeding," the judge replied, "and I'm going to extraordinary lengths to do that" — to which Defendant responded, "Incredible."  The judge also later told Defendant about "the kinds of things [he] need[ed] to answer to."  And after providing him with a long list of issues, the judge said that "[e]very one of those things needs to be explained, because without explanation they suggest what the government says [they] suggest[]."  Defendant labels this undue interference.  But we see it as the judge letting him know what Defendant could do to counter the government's arguments.

Regarding Defendant's complaint about the judge's giving a witness answers to defense questions asked on cross, context clarifies that Defendant tried to show a bank witness a loan application not charged in the case; that the judge simply — and

- 6 -

*Preventing an Effective Defense*

Defendant argues that the judge's actions kept him from "mount[ing] a proper defense." But the incidents he cites do not make that point.

Defendant faults the judge for not continuing the trial's start so his expert could recover from COVID and then be there as the government presented its case. What happened is that after noting that "the government ha[d] been preparing for this trial" and that "[i]t's very hard to schedule [witnesses] coming in from out of state," the judge expressed strong reluctance to grant another continuance. But the judge did say that he would wait until the expert recovered before hearing his testimony. If the expert needed to watch the proceedings before testifying, the judge did offer to "make a Zoom recording of the entire trial" available for the expert's review. "I think that sounds like a very workable solution," the expert stated (he had participated at this hearing via Zoom). Defendant raised no further objection.

---

correctly — predicted that the witness would not know about those documents; and that Defendant then acknowledged his mistake.

And on the truncating-cross-examination claim, Defendant quotes the judge's comment that "we need to wrap up and move on to the next witness" but omits that the judge then asked if he had any further questions — to which he answered, "That's all I got." See generally United States v. Graham, 146 F.3d 6, 11 (1st Cir. 1998) (indicating that in this era of bloated federal dockets district judges must have "wide latitude" in running trials so that "the proceedings" move "along in an orderly fashion").

And despite being reminded by us at oral argument that his client must show prejudice, Defendant's appellate lawyer also could *not* say how the case would have played out any differently if the expert had been at the trial the entire time. All of which undercuts Defendant's claim that the judge paid only "lip service" to fair-trial concerns (bolding and capitalization omitted). See Laureano-Pérez, 797 F.3d at 69; Ayala-Vazquez, 751 F.3d at 24.

Defendant separately — but relatedly — implies that the judge wrongly limited his expert's testimony. But as the government writes without any denial from Defendant, the defense wrongly tried to elicit testimony beyond the scope of the expert disclosures under Fed. R. Crim. P. 16. See Fed. R. Crim. P. 16 (d)(2)(C).

Defendant also says that the judge should have granted him "a further continuance" due to some health issues. But the judge gave him plenty of chances to bolster his continuance claim, including ordering the parties to depose his doctors. And the judge ruled that Defendant still came up short, finding that the depositions showed that he needed some non-emergency medical procedures — all minor and routine, nothing that "should delay the trial" (to quote the judge). The problem for Defendant is that he develops no argument showing that the judge slipped in ruling as he did. Which (again) constitutes waiver. See, e.g., Acosta-Colón, 741 F.3d at 193.

The same problem affects Defendant's insinuation that the judge wrongly limited his ability to show at trial how persons he had a beef with going back years ended up conspiring to have him prosecuted. The judge told him that "it's not a defense" to the charges "that these people ruined your life," though he did add that Defendant could "go a couple minutes" on the topic but then had to focus on the charges. And the difficulty for Defendant is that he develops no argument showing that the judge stumbled here too. Which (once again) leads to waiver. See, e.g., id.[5]

## Evidentiary Hearing

We also reject Defendant's claim that the judge abused his discretion by not holding an evidentiary hearing before ordering him to pay $2,449,352.57 in restitution. See, e.g., United States v. Robles-Torres, 109 F.3d 83, 85 (1st Cir. 1997) (noting that "evidentiary hearings at sentencing are — and should remain — the exception rather than the rule," and adding that "the decision to hold an evidentiary hearing at the time of sentencing

---

[5] Defendant says that "there are many" other examples of unfairness beyond the three just-discussed categories (his brief, for instance, hints at issues involving the judge's "expressions of annoyance" and "decisions on matters such as experts, subpoenas for witnesses, preclusion of evidence, among other matters"). But by not giving us "the necessary caselaw []or reasoned analysis" for those other examples, he waived them. See Rodríguez v. Mun. of San Juan, 659 F.3d 168, 176 (1st Cir. 2011); see also id. at 175 (stressing that "we deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed argument").

or, alternatively, to eschew such a hearing, lies within the sound discretion of the sentencing court").

Defendant starts by spotlighting a *2014* appraisal valuing 104 Foxberry at between $6,550,000 and $7,200,000, and a *2017* appraisal valuing it at $1,447,800. He then theorizes that the *2021* foreclosure sale could have fetched "considerably more" than the $967,885.13 recovered there, enough to pay everyone back in full had "the property [been] sold at or near its value in 2014" — if only the bankruptcy trustee had not "abandon[ed] this property" and the creditor bank had not "allowed [the property] to deteriorate before selling it." So as he sees it the bankruptcy trustee and the bank creditor proximately caused the at-issue losses, not him. And from there he argues that the judge should have ordered an evidentiary hearing so that he (Defendant) could have definitively shown "who [wa]s responsible [for] the wasting of the property."

Put aside that part of Defendant's theory runs up against Robers v. United States, where the Supreme Court held that a judge "must reduce" the restitution a defendant owes a victim in a loan-fraud case "by the amount of money the victim received in selling the collateral, not the value of the collateral when the victim received it." See 572 U.S. 639, 641 (2014); see also id. at 645-46 (making the straightforward observations that "[f]luctuations in property values are common"; that "[t]heir existence (though

- 10 -

not direction or amount) is foreseeable"; and that "[m]arket fluctuations are normally unlike, say, an unexpected natural disaster that destroys collateral or a victim's donation of collateral or its sale to a friend for a nominal sum — any of which . . . could break the causal chain"). Because even a criminal "defendant is not entitled as of right to an evidentiary hearing on a pretrial or posttrial motion," Defendant had to "carry a fairly heavy burden of demonstrating a need for special treatment." See United States v. Alegria, 192 F.3d 179, 188 (1st Cir. 1999) (quoting United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993)). But he gives us nothing indicating that he met that entry-level burden. His appellate counsel conceded before us that the defense never proffered what proof of waste it would present at the asked-for hearing (also and tellingly, Defendant did not object to the trustee's property abandonment and ignores how it would go against the creditor's economic self-interest to let the property deteriorate). Defendant's bottom-line position seems to be that he should have gotten a hearing to test his speculative waste theory. But that is not how the law works. See id. See also generally Banks v. Workman, 692 F.3d 1133, 1144 n.4 (10th Cir. 2012) (Gorsuch, J., for the panel) (making the commonsense point that "an evidentiary hearing is not a fishing expedition").

## **Final Words**

For the above reasons, we *affirm* the judge's decisions challenged by Defendant.